JENNIE GILMAN, Trustee, In Equity,

*vs.*

HELEN BURNETT, et als.

Kennebec.    Opinion October 27, 1917.

*Wills.   Cy pres doctrine.   Rule when this doctrine can be applied.   Rule where
clause in will creates a public charity and it is impossible of execution
and no general charitable intent shown.*

In a bill in equity brought to construe a will,

*Held:*

1.   When it appears from a will that the intention of the testatrix was that her
property should be applied to a charitable purpose, whose general nature is
described so that a general charitable intent can be inferred, then if by a change
of circumstances it becomes impracticable to administer the trust in the precise
manner provided by the testatrix the doctrine of cy pres may attach and the
gift applied to some kindred charity as nearly like the original purpose as possible.

2.   But if it appears that the gift was limited to a particular purpose and no
general charitable intention is discovered, then if it becomes impossible to
carry out the object, the doctrine of cy pres does not apply, and in the absence
of any limitation over or other provision, the legacy lapses.

3.   The testatrix in the case at bar devised her farm and wood lot in Augusta
in perpetual trust to be used as a home for one or more unmarried women who
have been employed in the straw industry in Massachusetts.   The words of the
will reveal a particular charitable gift but no general charitable intent, and
therefore the cy pres doctrine does not apply.

4.   The trust is impossible of fulfillment as the trustee admits because there are
no funds with which to maintain the property, and it is constantly depreciating
in value.

5.   As it is impracticable and impossible to execute the particular charity for
which provision is made, the gift fails and the property in question must pass
to the next of kin as intestate property.   The estate devised to the plaintiff
depends upon the validity of the trust and falls when that falls.

Bill in equity asking for the construction of a certain clause in the will of Mina Perry. The cause was heard upon bill, answer and replication, and the sitting Justice before whom the cause was heard, being of the opinion that questions of law were involved of sufficient importance to justify the same and the parties agreeing thereto, the cause was reported to the Law Court to determine the construction of the will in question, as provided in R. S., 1903, Chap. 79, Sec. 6, paragraph 8 (R. S., 1916, Chap. 82, Sec. 6, paragraph 10); whether the trust therein created has failed, and if it had not failed in what manner the trust should be executed in order to carry out the intention of the testatrix. Decree in accordance with opinion.

Case stated in opinion.

*Melvin S. Holway*, for plaintiff.

*LeRoy L. Hight*, for defendants.

SITTING: CORNISH, C. J., KING, BIRD, HALEY, HANSON, PHILBROOK, MADIGAN, JJ.

CORNISH, C. J. The plaintiff asks the construction of the following clause in the will of Mina Perry, who died January 13, 1916:

"Tenth: I give, bequeath and devise to my beloved aunt, Lydia B. Pickett, of Hyde Park, Massachusetts, the farm owned by me in Augusta, Maine, which is situate on the Eight Rod Road, so-called, on the west side of the Kennebec River, and about two and one-half miles north of the Kennebec Bridge in said Augusta; said farm containing fifty acres, more or less, with the buildings thereon; also my wood lot situate in Sidney in said County of Kennebec and State of Maine, and all the remainder of my estate, real, personal or mixed, wherever found or however situated, to said Lydia B. Pickett, in trust for the following purposes, to wit:

That said farm shall be occupied by my dear aunt, Lydia B. Pickett and that she shall afford a home for one or two, or more, if it may be arranged, of the unmarried women who have been employed in the straw industry of Massachusetts; that having been my occupation, and knowing the many worthy and deserving cases in the employ of that industry I desire that my accumulations, however limited they may be, shall be so intrusted as to afford to my sisters in this line of work a place of refuge and comfort; trusting that others may feel like enlarging and endowing this beautiful spot where my said farm

is situated in order to afford them the necessary comforts and enjoy-
ments.  Said trust to be carried on perpetually, and at the decease
of my dear aunt, Lydia B. Pickett, or should I survive her, then I
nominate and appoint my dear friend, Miss Jennie Gilman, of Read-
field, Maine, her successor; and at the decease of my dear friend,
Miss Jennie Gilman, then I nominate and appoint my dear friend,
Mrs. Cora I. Morse of said Medway, Mass., her successor; and her
successor or successors in carrying on this trust shall be appointed by
the Judge of Probate for said County of Kennebec, upon the recom-
mendation of my executor hereinafter named, if alive, otherwise
upon the recommendation of the Mayor of said City of Augusta.   This
trust shall not take effect until October 1, 1908, and this provision
is made so that the present occupant of the farm, William B. Smith,
shall not be disturbed until that period, but shall enjoy the privileges
and emoluments of said premises until that time.   Said William B.
Smith not to be allowed to cut any wood on said premises.   What-
ever funds may remain at the time of my decease I hereby give and
bequeath to said trust above mentioned, the income to be used in the
maintenance and carrying on of the object of the aforesaid trust."
The entire property disposed of under this will consisted of the real
estate specified in item ten appraised at $2,360. and personal property
appraised at $629.20.   The debts, legacies and expenses of adminis-
tration will exhaust all the personal property, leaving for the trust
estate the farm of fifty acres, the wood lot and a small amount of
furniture and furnishings in the farm house.   Lydia B. Pickett, the
aunt of the testatrix, the trustee named in the will died prior to the
death of the testatrix.   The plaintiff, Jennie Gilman, named as her
successor, has been duly appointed and qualified.   She alleges in the
bill that it is impossible to carry out the terms of the trust, that the
farm has neither stock nor implements, and there is no money with
which to purchase any or to pay the ordinary running expenses, that
the income of the untilled land is very small and the property is
steadily depreciating in value; that she is unable to live upon the
premises and afford a home to one or more of the designated benefici-
aries, that no other trustee would be able to do this without assistance
apart from the property and that no outside party has shown a dis-
position to endow the farm so as to fulfill the purposes of the trust.
All these allegations are admittedly true.

What is the power and the duty of the court when confronted with this situation? The plaintiff trustee asks us to find that she is a devisee for life, charged with a trust, that Cora I. Morse may be decreed to have a succeeding life estate, charged with the same trust, that the doctrine of cy pres shall be applied by the court in directing the execution of the trust and some plan be devised which will carry out the alleged general charitable intent of the testatrix. No suggestions are made as to what that plan might be. The established rules of law, however, as applied to the construction and execution of charitable trusts will not permit this course to be pursued.

That the clause in the will under consideration created what is known in law as a public charity is assumed by counsel on both sides and we will follow the assumption without determining the question. Such determination is unnecessary. Granting that a public charity was created, must it lapse under the facts presented here? This question we are constrained to answer in the affirmative.

It is conceded that the trust is so impracticable that it is impossible of execution for the uncontradicted reasons recited by the trustee in the bill. The real estate is grossly insufficient for the contemplated purpose. It is not even self-supporting. There is no additional endowment. There is no provision by which the property can be sold and the proceeds converted into a fund which could be allowed to accumulate, and if accumulations were permitted, the principal is so meagre that the time of enjoyment would be postponed so far into the future that the purpose of the testatrix, which was intended to be executed in a short time after her decease, would be thwarted.

In this respect this case differs from *Allen* v. *Nasson Institute*, 107 Maine, 120, where, after the termination of certain life estates real estate of great value was left in trust for the establishment of a young ladies institute. It was there expressly provided that a portion of the income during the continuance of the life estates should be funded, and at their termination a large portion of the real estate should be sold and the proceeds added to this fund. Under those conditions the court held that the trust was not impossible of fulfillment.

The case at bar, in this aspect, more nearly resembles *Teele* v. *Bishop*, 168 Mass., 341, where a bequest of not exceeding twelve thousand dollars was made to trustees for the purpose of purchasing a lot and building a chapel in Carndrine, Ireland, the title to be vested in the Bishop of that diocese and his successors, to be used

forever for purposes of public worship under the auspices of the
Roman Catholic Church. The scheme of the testatrix was found to
be impracticable and a wasteful expenditure of the trust fund, because
the population of the place was small, and diminishing, the people
too poor to maintain the chapel or support a priest and the bishop
refused assistance without which the people could do neither. The
trust was accordingly held to fail. The same was held in *Bowden* v.
*Brown*, 200 Mass., 269, the trust provision being: "the remainder
shall be given to the town of Marblehead, toward the erection of a
building that shall be for the sick and poor, those without homes. I
leave this in the hands of B. B. and R. of Marblehead." The town
declined to accept the legacy which amounted to about $8,000 but
which of itself was insufficient for the purpose. Kindred cases on
this point are *Ely* v̇. *Atty. Gen.*, 202 Mass., 545; *Atty. Gen.* v. *Hurst*,
2 Cox, Ch. Cas. 369, and *In re White's Trusts*, 33 Ch. Div., 449.

To allow the trust property to remain as it is means its uselessness
in the present and its greatly diminished value in the future. It
should either be applied in such a way as to effectuate the general
charitable intent of the testatrix, if such intent can be found, by
invoking the doctrine of cy pres, or it should be held to belong to the
heirs at law on the ground of a lapsed devise.

Whether the cy pres rule attaches depends upon whether or not the
will itself discloses a general charitable intention or a gift for a partic-
ular charitable purpose without that intention. The rule under each
state of facts has been clearly stated as follows: "If it appears from
the will that the intention of the testatrix was that her property
should be applied to a charitable purpose whose general nature is
described so that a general charitable intent can be inferred, then if
by a change of circumstances or in the law it becomes impracticable
to administer the trust in the precise manner provided by the testa-
trix, the doctrine of cy pres will be applied in order that the general
charitable intent which the court regards as the dominant one may
not be altogether defeated. . . . . But if the charitable purpose
is limited to a particular object or to a particular institution and there
is no general charitable intent, then if it becomes impossible to carry
out the object or the institution ceases to exist before the gift has
taken effect, and possibly in some cases after it has taken effect, the
doctrine of cy pres does not apply, and in the absence of any limita-
tion over, or other provision, the legacy lapses." *Teele* v. *Bishop of*

*Derby*, 168 Mass., 341. In that case the court found no general charitable intent but a bequest for the particular purpose designated. Other illustrations are *Bowden* v. *Brown*, 200 Mass., 269, before cited; *Atty. Gen.* v. *Hurst*, 2 Cox, Ch. Cas., 369, where the gift was for the building of a church in a specified place; *Gladding* v. *Saint Matthew's Church*, 25 R. I., 628.

The same distinction between a general charitable intent and a particular charitable gift has always been recognized and applied by this court in accordance with the purpose disclosed in the particular will under consideration, such general intent being discovered and therefore the cy pres doctrine applied as in *Lynch* v. *Cong. Parish*, 109 Maine, 32, and only a special gift being found and therefore the cy pres doctrine rejected as in *Merrill* v. *Hayden*, 86 Maine, 133, and *Brooks* v. *Belfast*, 90 Maine, 318.

We search in vain in the will in the pending case for evidence of any general charitable intent on the part of the testatrix. The words in every portion preclude such an inference. The other items of the will embrace small gifts to several personal friends, together with a trust fund of one hundred dollars to the Forest Grove Cemetery Association. The character of the testatrix's intention must be gleaned from item ten alone. Here the emphasis is laid not on the general relief of the beneficiaries named but on one specific object to be carried out at one specific place. The farm is to be occupied by the trustees named where "a home is to be afforded" one or more of the beneficiaries. It is to be "a place of refuge and comfort." She trusts "that others may feel like enlarging and endowing this beautiful spot where my said farm is situated in order to afford them the necessary comforts and enjoyments." The trust is not to take effect until a later day in order to prevent the then occupant from being disturbed in his occupancy. The final sentence is "whatever funds may remain at the time of my decease I hereby give and bequeath to said trust above mentioned, the income to be used in the maintenance and carrying on of the object of the aforesaid trust", that is the maintenance and carrying on of the farm for the benefit of the persons specified. There is nothing to indicate that the testatrix intended to make any provision for the recipients of her bounty unless they could be provided for in her old home, the spot that she loved and thought so beautiful. Her charitable purpose was linked with the particular farm which constituted the subject of her bounty. The exact loca-

tion provided for in the will was the paramount consideration in her thought, and a general provision for the beneficiaries would seem to be quite beyond her contemplation. This case is therefore to be sharply distinguished from the line of decisions cited by the learned counsel for the plaintiff, in all of which the court found a general charitable purpose, such as *Osgood* v. *Rogers*, 186 Mass., 238; *Richardson* v. *Mullery*, 200 Mass., 247; *Grimke* v. *Atty. Gen.*, 206 Mass., 49; *Norris* v. *Loomis*, 215 Mass., 344, and *Lynch* v. *Cong. Parish*, 109 Maine, 32.

We are therefore of opinion that it is impracticable and impossible to execute the particular charity for which provision is made, that the doctrine of cy pres cannot be invoked, that the gift fails and the property in question must pass to the next of kin as intestate property. *Haskell* v. *Staples*, 116 Maine, 103. The estate devised to the plaintiff depends upon the validity of the trust and falls when that falls.

Costs and reasonable counsel fees may be allowed by the sitting Justice and paid from the estate.

*So ordered.*