Wanamaker's Estate.

Argued April 12, 1933. Before Frazer, C. J., Simpson, Kephart, Schaffer, Drew and Linn, JJ.

*R. M. Remick,* of *Saul, Ewing, Remick & Saul,* with him *Aaron S. Swartz, Jr., Francis B. Bracken, Fred B. Smillie* and *Montgomery & McCracken,* for appellants, Nos. 17 and 21.

*A. H. Wintersteen,* of *Wintersteen, McCoy & Wintersteen,* with him *Maxwell H. Kratz* and *Stewart & Shearer,* for appellee, Nos. 17 and 21, and appellant No. 18.

*William A. Carr,* of *Carr & Krauss,* with him *Chadbourne, Stanchfield & Levy,* for Mary B. Warburton, appellee, No. 18.

Opinion by Mr. Justice Linn, June 30, 1933:

The single question requiring discussion is: has Princeton University (for convenience, hereafter called university) complied with the condition imposed by the testator? He died March 9, 1928. The conditional gift

appears in a codicil made August 5, 1927, about seven months before his death, and is as follows:

"Sixteenth. In the event of Princeton University, Princeton, New Jersey, establishing a permanent course for Mercantile Business Instruction, I order and direct the annual payment of Fifteen Thousand ($15,000.00) Dollars for the creation of Ten (10) Scholarships, of Fifteen Hundred ($1,500.00) Dollars, each, per year, to be known as the Thomas B. Wanamaker Scholarships for Mercantile Business. Such Scholarships to be awarded, and regulated, by the Trustees of Princeton University, in conjunction with the advice, and coöperation, of my Trustees, but said Scholarships to be conducted, and maintained, in accordance with the Rules and Discipline of Princeton University as conducted through its Board of Trustees, President and Professors, connected with said work."

What is meant by "In the event of [the university] establishing a permanent course for mercantile business instruction"? At the time of the adjudication (January 28, 1931) no course had been established with the avowed purpose of complying with the condition. The learned auditing judge adopted the position of the university, to the effect that, while no course for mercantile business instruction had been established after testator's death, the evidence (going back to 1925) showed that a course, sufficiently satisfying the condition, could be selected from those offered in the department of economics and social institutions, as to support an inference that the curriculum effective at the date of testator's death, complied with the condition. The seven trustees,* appointed by testator to administer the trusts declared in his will, whose judgment on such a subject is entitled to serious consideration, then filed a petition for the opening of the adjudication. Their petition contained the following averment:

---

* Wm. L. Nevin, C. S. Newhall, M. B. Saul, Wm. P. Gest, Robert H. Montgomery, J. Willison Smith, Owen J. Roberts.

"5. Your petitioners have given attentive consideration to the said Digest of the course for Mercantile Business Instruction proposed by the said University [which had been submitted to them by the university] and also to the said proposed plan for awarding the scholarships therein, and as in their judgment the said program does not meet the conditions of the said Codicil, deem it their duty to bring the said Digest and plan to the attention of your Honorable Court with a view to having a reconsideration of the questions raised by the exceptions filed to the adjudication, after an examination of the said Digest and the hearing of such further testimony in relation thereto as the Court may consider proper.

"Your petitioners believe and respectfully represent that testator had in mind a course of instruction more especially relating to purely mercantile business than any of the courses mentioned in the said Digest, and did not contemplate the awarding of scholarships to those pursuing an A. B. course, who would simply be required in the junior and senior years to receive instruction in the economic branches of study included in the said Digest. They think he had in mind the establishment at Princeton University of such courses as have been established at other Universities of like standing. Thus at Harvard University, in the Graduate School of Business Administration, as shown by its catalogue, the program of instruction includes 'Marketing, Advertising, Retail Distribution and Store Management, and Sales Management.' In the University of Pennsylvania, in the Wharton School of Finance and Commerce, the instruction includes 'Merchandising, Advertising, Salesmanship, Distributive Agencies and Methods, Sales Administration, Retail Merchandising, Merchandising Research.' In Columbia University, School of Business, Graduate and Under-Graduate courses, the instruction includes 'Elements of Marketing, Sales Organization and Administration, Purchasing and Materials Control, Economics of Consumption, Economics of Fashion, Eco-

nomics of Retailing, Retail Merchandising, City Produce Marketing, Export Merchandising, Import Merchandising, Marketing Problems and Sales Policies, Seminar in the Marketing of Perishable Products, Seminar in the Law of Marketing.' Other important Universities have like courses of instruction, relating more especially to the problems of a mercantile business.

"Your orators therefore believe and respectfully represent to the Court, that in establishing the scholarships under the said Codicil, it should be definitely determined whether or not testator intended to require students awarded such scholarships to pursue the A. B. course at Princeton University, receiving instruction during the junior and senior years only in branches of economics mentioned in the aforesaid Digest, or whether he did not intend a course of instruction such as has been established at other Universities and relating especially to mercantile business."

The university objected to the proposed reopening of the adjudication on the ground that the point had been once determined and that the proposed evidence was irrelevant. The petition was allowed. Instead of calling witnesses, the parties, by agreement, stipulated additional evidence, showing, in detail, the courses of study offered in the three universities mentioned in the paragraph quoted from the petition of the trustees, and in New York University, and that the same courses had been available since December 1, 1925. Though agreeing to the stipulation, the university objected that the evidence was not relevant. The court subsequently filed an opinion adhering to the conclusion reached before, but saying: "In again considering the main question as to compliance with the Codicil, we are free to admit that the courses in evidence in the stipulation and exhibits seem more clearly defined as business courses, and approach in more definite outline courses in mercantile business instruction than that at the university and appear to be more exactly what testator intended. But

even this extreme condition does not prove that the university does not adequately comply with the terms of the Codicil. The inquiry is not whether its course is more exactly a course in mercantile business instruction than that in any other institution, or even whether its course is equally as exactly and definitely such a course as that of any other institution. The correct test is as to whether it is a course that can be called such at all, whether it has a course that barely qualifies as such. If it has, it has complied." The test so applied is not in accordance with settled rules of law presently to be mentioned.

We must look at the matter (Missionary Society's Appeal, 30 Pa. 425, 433; Mayer's Estate, 289 Pa. 407, 410, 137 A. 627; Moorehead's Estate, 289 Pa. 542, 547, 137 A. 802) from the position of the testator drafting the codicil in August, 1927. He was then the owner of the capital stock of the corporation John Wanamaker, Philadelphia, which, in turn, owned the shares of stock of the corporation, conducting the Wanamaker department store in New York. The capital stock had a value of many millions of dollars. It is matter of general information that these department stores had been founded and conducted by testator's father, for years with the assistance of testator's brother, Thomas B. Wanamaker (whose memory he proposed to perpetuate by associating his name with the scholarships) and by himself, and for some years immediately prior to his death, by himself alone. They were mercantile* business establishments, and it is with this background that the word mercantile was used, and must be considered, as descriptive of business instruction. It is likewise matter

---

* Mercantile is defined as follows: by Century Dictionary: of or pertaining to merchants, or the traffic carried on by merchants; having to do with trade or commerce; trading; commercial; characteristic of the business of merchants; by Standard Dictionary: of, or pertaining to, or characteristic of merchants, or the business of buying and selling merchandise; conducted or acting on business principles; commercial.

of general information, which, in the circumstances, must also be considered, that the successful conduct of department stores of such magnitude, has become a highly specialized occupation. These facts have distinct bearing in the ascertainment of his intention as expressed in the condition. Testator was a graduate of the university. In appellants' brief it is said (we quote the fact because the statement is not challenged by appellee) that he "had always maintained a close contact with its affairs. From time to time during his lifetime he had made various gifts to the university." From the words imposing the condition the court is justified in concluding that, in his judgment, the university in 1927 and in 1928 furnished no course for mercantile business instruction in the sense in which he used those words; it is inconceivable that, if he considered the courses in economics sufficient to satisfy his purposes, he would have provided that one should be established as a condition of his gift. He used words plainly and clearly dealing with the future. "In the event of [the university] establishing a permanent course" can only mean that it must establish something which it did not then have; he imposed a condition precedent to the right to receive the gift: Gunning's Estate (No. 1), 234 Pa. 139, 83 A. 60. In that case it was said "There must be strict and literal performance of a condition precedent, and unless there is such, the devisee takes no title." See, too, Adams v. Johnson, 227 Pa. 454, 456, 76 A. 174; Thompson's Estate, 304 Pa. 349, 354, 155 A. 925. We cannot accept the following suggestion made in the brief of the university: "It is to be noted that the testator did not say 'in the event that the university *shall* establish' but 'in the event of the university *establishing*.'" We think that the testator's words mean, and by him were intended to mean, precisely the same thing as if he had said "In the event that the university shall establish." They must be taken in their ordinary signification in the absence of some reason appearing in the

will for considering them in any extraordinary sense, and no reason for so doing appears. In recognizing that the testator was at least generally familiar with the character of instruction offered in the university's department of economics, and, also in similar departments of other universities (compare Seagrave's Appeal, 125 Pa. 362, 367, 374, 17 A. 412), we must also recognize that, engaged, as he was, in a merchandising business on the largest scale, he must have known that, in addition to courses in economics generally offered in universities and colleges, there were also offered courses specifically devoted to mercantile business instruction in well known institutions, among them, those mentioned above. We must also consider, that in phrasing the codicil, he doubtless had in mind mercantile business courses of the character offered in those institutions, in contra-distinction to spelling out a mercantile business course from those offered in economics at this or any other university. The testator's relation to the retail department store business was of such well known character that the court must consider it as an element of singular importance in construing the gift.* The auditing judge was therefore right in admitting and considering the evidence received by the stipulation: Seagrave's Appeal, supra. It appears by this stipulation (of course apart from what is offered in departments of economics) that, in the Harvard Graduate Business

---

* "The Wanamaker Corporation is a large importer of articles sold in its Philadelphia and New York stores. It is identified also with London and Paris, with stores in both those cities, as its advertisements and billheads show. It is not only fairly conceivable but very probable that the testator, in providing for scholarships at Princeton in the course for mercantile business, had in mind the training of young men in such a way as to make them useful employees in a large way in some such enterprise as those of the Wanamaker Corporation here or abroad—some in time becoming heads of departments,—including particularly the international departments of the corporation." From the brief filed on behalf of the university.

School, courses were offered (we specify only the headings) in methods of marketing, merchandise, advertising problems, retail distribution, retail store management, problems in retailing and sales managing. The Wharton School offered courses in merchandising, advertising, marketing research, sales management, sales distribution, retail merchandising, distribution costs and agencies. In Columbia, there were courses in marketing, sales organization and administration, purchasing and materials control, economics of consumption, economics of fashion, economics of retailing, retail merchandising, export and import merchandising, marketing problems and sales policies. New York University offered courses in marketing and marketing methods, essentials of advertising, fundamentals of advertising typography, advertising copy, and the like. As to those courses in each of the institutions mentioned, the stipulation specified great variety of detail which need not be set forth here, but of which the testator must have had general, if not detailed, knowledge.

Now it must be conceded to be significant, in answering the question raised by this appeal, that nothing specifically devoted to instruction in these subjects appears in the choice of courses* offered by the university as complying with the condition, and yet it is these subjects of instruction that the circumstances surrounding the testator would at once suggest as those intended to be included by his use of the words mercantile business instruction. The digest, submitted by the university to the trustees, discloses comprehensive courses in the general field of economics such as one would expect any

---

* Contrast with the headings given above, the following from the university's official circular of the Department of Economics in evidence: Elements of Economics, Labor Problems, Public Finance, Statistics, Principles of Accounting, Corporation Accounting and Finance, Transportation, Public Utilities, Money and Banking, International Trade and Finance, Theories and Problems of Social Reorganization, Government and Business; the Problem of Public Control.

great university to offer. But the contrast between the offered instruction in economics, and the courses in the other institutions, specifically devoted to instruction obviously qualifying, in a peculiarly special sense, as instruction for mercantile business, is so marked that the court may not, for a moment, assume that this testator would not have the difference in mind.* Indeed, the learned auditing judge recognized this in his supplemental adjudication, when he said "We are free to admit that the courses in evidence in the stipulation and exhibits seem more clearly defined as business courses and approach in more definite outline courses in mercantile business instruction than that at the university, and appear to be more exactly what testator intended...... The correct test is as to whether it has a course that can be called such at all, whether it has a course that barely qualifies as such. If it has, it has complied."

We cannot accept that view because it fails to give adequate weight to the settled requirement that, in the interpretation of the testator's language, we must consider and give appropriate effect to the circumstances in which he used the words imposing the condition, and which, we must assume, he had in mind at the time. The university frankly makes no claim to offer courses for mercantile business instruction such as those offered by the other institutions referred to; the sum of its

---

* This contrast sharply suggests the difference between adherence to what may be called traditional university policy and the modern " 'service' functions which many American universities have undertaken"; see Flexner, Universities, American, English, German, pp. 128-175. "Does anyone really suppose that Yale and Princeton, having no schools of business, will for that reason in future be less conspicuous in business and banking than Harvard and Columbia which have?......Will significant contributions to economics come from business schools rather than faculties of economics? Will critical and fundamental thinking come from researchers who live on annual contributions that come from and are managed by 'business leaders'? These questions answer themselves; they dispose of the present schools of journalism and business as genuine university enterprises." Ibid, pp. 175-176.

claim in the evidence is that the instruction offered in the department of economics furnishes an admirable foundation for any student desiring to engage in any business. It makes no pretense to specialization for merchandising. The chairman of the department of economics testified that "At Princeton there is no school that actually pretends to teach the primary principles of a mercantile business as such." "There is no school [in the university] that attempts to teach of the technique, detailed technique, or routine of the mercantile business." His testimony contains the following comprehensive account of the purpose of the courses offered in economics. "Q. As I understand your very clear explanation of the course, it is really intended to equip a student who is seeking an A. B. degree with that sort of universal knowledge, if I may so speak, with regard to economics, relating back to manufacturing, mercantile pursuits, international finance, corporate securities issues, all that sort of thing; so that when he comes out he may make his choice whether he wants to enter a business career, or, entering any of those various spheres of activity, be fairly well equipped, at least to start him off? A. Yes. And, I should say that it would equip him to start off in any of them. But, if a boy knows in advance the field which he wishes to enter, he may direct his effort largely in the department to that particular field. Mr. Bracken: That is all. The Court: They certainly get fundamental principles of economics. Mr. Wintersteen: Also practices, from laboratory work in the developing of those principles."

The learned auditing judge was, therefore in error in concluding that a course for mercantile business instruction, such as was obviously contemplated by the testator, as the condition of his gift, existed at the university because the facts do not support the inference; whether they do, is a question of law reviewable here. On the contrary, as appears from what has been said, the evidence against the inference is overwhelming. The error

may have resulted, as the opinion filed would indicate, from confusion of two principles, one applied in determining whether a condition has been complied with, the other dealing with the object of a charity; the former requiring strict compliance with the condition precedent, the latter requiring a benignant construction. In the brief filed on behalf of the university, its learned counsel invokes the "rule of benignity and the application of the cy pres doctrine." The rule that "when a charity is created," "every means to uphold it" will be adopted, cannot apply unless the charity is created. At bar, the charity is not created unless the condition of its creation is performed, and that is the only question involved here. The rule does not permit the court to hold that the requirement that a course for mercantile business instruction be established is satisfied by anything less than such a course. Partial compliance is not compliance: Gunning's Estate and other cases cited above. In Missionary Society's Appeal, supra, a gift to charity failed because the condition—establishment of "a collegiate department for the benefit of the natives and citizens......added to the mission and schools aforesaid"—was not complied with; in White's Estate, 174 Pa. 642, 34 A. 321, the gift failed for the same reason; in Seagrave's Appeal, supra, the court found that the condition was satisfied; in Mears's Estate, 299 Pa. 217, 149 A. 157, the award was cy pres—a trustee was substituted for one who declined to act, but it was specifically stated, that "The realization of his charitable design is not however made dependent upon any condition or event."*

---

* "On the other hand, if the gift in trust for charity is itself conditional upon a future and uncertain event, it is subject, in our judgment, to the same rules and principles as any other estate depending for its existence upon a condition precedent. If the condition is never fulfilled, the estate never arises......" SELBORNE, L. C. in Chamberlayne v. Brockett, L. R. 8 Ch. App. 206, 211; see, too, In re University of London Medical Sciences Institute Fund, Fowler v. Atty.—Gen. L. R. (1909) 2 Ch. 1.

374

In Nos. 17 and 21 the decree is reversed, and in No. 18 the appeal is dismissed; costs to be paid out of the fund for distribution.

