CITY OF BELFAST, IN EQ.

*vs.*

GOODWILL FARM
BELFAST HOME FOR AGED WOMEN
GIRLS HOME ET AL.

Waldo.    Opinion, February 9, 1954.

*Clyde R. Chapman,* for City of Belfast.

*McLean, Southard & Hunt,* for Executor.

*Lorimer K. Eaton,* for Ivan Bartlett, Virgie Knapp,
                    Stewart Kingsbury and
                    Lamont Kingsbury

*Butler, Merrill & Bilodeau,* for Goodwill Farm,
                    Children's Aid Society of
                    Maine, alias
                    and Belfast Home for Aged
                    Women.

*Ralph I. Morse,* for Belfast Home for Aged Women.

SITTING: THAXTER, FELLOWS, WILLIAMSON, WEBBER, JJ.
MERRILL, C. J., and TIRRELL, J., did not sit.

WILLIAMSON, J. On report in equity. The City of Belfast seeks a decree relieving the City of a trust under the will of F. Louis Bartlett and instructing the City to whom and in what manner the property held by it should be distributed. The named defendants are Goodwill Farm, Belfast Home for Aged Women, Girls Home, the heirs of F. Louis Bartlett, and the executor under the will of F. Louis Bartlett. The case is before us on bill, answers of the several defendants, and agreed facts. Subsequent to the bringing of the bill, the Attorney General sought and received permission to intervene as a party defendant and thereafter disclaimed any further interest in the case. See R. S., Chap. 17, Sec. 4.

The controversy arises over the disposition of the residue of the estate under the fourth clause of the will, reading:

> "I give, bequeath and devise to the City of Belfast, Maine, forever, all the rest, residue and remainder of my estate, real, personal and mixed, wherever situated and however and whenever acquired, conditioned, however, that the City of Belfast, Maine shall maintain a home for aged men on my homestead farm, said home to be named "Bag-

ley Home for Aged Men". Said City of Belfast to have the right to make such charges as an entrance fee to each individual or applicant in the same manner and under like circumstances as is done by the Belfast Home for Aged Women located in said Belfast, Maine, in other words, it is not my purpose to request the City of Belfast to maintain a poor farm. It is also my wish that all of my books and furniture found in said buildings at the time of my decease, in so far as is practicable, shall be used to furnish said home and be kept for the use and occupancy of the residents of said home for aged men. In the event, however, the City of Belfast, Maine, refuse to accept this legacy and devise, I give, bequeath and devise the same to the Girls Home and Belfast Home for Aged Women, both located in Belfast, Maine, and the Good Will Farm located in Fairfield, Maine, to share and share alike."

The testator, F. Louis Bartlett, late of Belfast, died November 12, 1950. Under his will dated August 4, 1949, and allowed December 12, 1950, he gave $100 each to two individuals, $400 to the City of Belfast for perpetual care of his cemetery lot, and the residue in the fourth clause above. In the fifth clause he directed his executor to deliver certain articles and personal property listed in a black book to the persons named therein.

On July 16, 1951, the City Council of Belfast voted to accept the trust. The City thereafter received from the executor property valued at $28,721.65 in the first and final account of the executor allowed in the Probate Court in March 1952. The homestead farm devised under the will was appraised at $5350. The City sold at auction items of personal property not deemed essential to the operation of the homestead farm as a home for aged men. The City announced in the local press that it was ready to receive applications for admission to the "Bagley Home for Aged

Men." No applications, however, were received from such announcement.

On August 13, 1952, the City Council, to use the words of the bill "having become convinced that there were no candidates for admission to such home as contemplated by the will, and that the sum of approximately $25,000 left by the above will to the trustees would be insufficient to equip the above homestead farm as a home for aged men and to support and maintain in the future aged men likely to desire admission, the said city council voted to instruct its City Colicitor to commence this bill in equity to determine to whom the assets of said trust should be delivered, in order to terminate completely and for all time any connection of the said City of Belfast with said trust."

The City, the heirs, and the several institutions all agree that the City of Belfast should be relieved from any further obligation as Trustee and that the continuance of the trust for the benefit of a home for aged men will serve no useful purpose. In brief, they agree the gift for the Bagley Home for Aged Men has failed. The Attorney General, who, as we have seen, has disclaimed any interest in the case, has entered no objection to this view of the matter.

We start the discussion of the case with these facts accepted, namely, that the City should be relieved as Trustee and that the gift for the Bagley Home for Aged Men has failed.

The questions for decision are:

(1) Does the residue go

    (a) *cy pres* under a plan to be framed by the court, or

    (b) to the heirs, or

    (c) to the named institutions?

(2) If the residue goes to the named institutions, does the Children's Aid Society of Maine take under the name of Girls Home, or does this share go to the heirs?

It is strongly urged that the City refused to accept the gift, and hence under the will the institutions took the residue. We are not called upon to meet this issue. The fact is the City did not refuse—it accepted the gift. Whether the acceptance was completed by the Council vote of 1951 need not be determined. It is plain that by the 1951 vote and the receipt of the trust property, taken together, the trust with its responsibilities was accepted by the City. Thereafter it was too late for the City to refuse the gift. "The vote of the town was a valid acceptance of the trust. It could not thereafter disclaim. *American Academy of Arts & Sciences* v. *Harvard College*, 12 Gray 582, 595; *Drury* v. *Natick*, 10 Allen 169, 183; Am. Law Inst. Restatement: Trusts, Sec. 102(2)." *City Bank Farmers Trust Co.* v. *Carpenter*, 319 Mass. 78, 64 N. E. (2nd) 636, 637. 14 C. J. S. 462, Charities, Sec. 28. On acceptance of devise or bequest by town see R. S., Chap. 80, Sec. 103.

The claim of the institutions cannot rest upon a refusal of the City to accept the gift. It must therefore be based upon the failure of the gift for the purposes stated in the will. The difficulty it may be noted lies not with the Trustee, but with the size of the fund and the purposes of the gift. Equity does not hesitate to appoint a new trustee to carry out a trust, but such an appointment would not solve the present problem. *Manufacturers National Bank* v. *Woodward*, 138 Me. 70, 21 A. (2nd) 705.

The trust property cannot be applied under the principle of *cy pres* for relief of the aged men of Belfast for three reasons.

*First:* The testator expressed no general charitable intent to aid aged men. There is thus lacking an essential

element in the application of *cy pres*. The testator made the gift for maintenance of a home on his homestead farm. "But, if the charitable purpose is limited to a particular object, or to a particular institution, and there is no general charitable intent, then, if it becomes impossible to carry out the object, or the institution ceases to exist before the gift has taken effect, and possibly in some cases after it has taken effect, the doctrine of *cy pres* does not apply, and in the absence of any limitation over or other provision, the legacy lapses." *Teele* v. *Bishop of Derry et al.*, 168 Mass. 341, 47 N. E. 422, 38 L. R. A. 629, 60 Am. St. Rep. 401.

The case is not unlike *Gilman* v. *Burnett*, 116 Me. 382, 102 A. 108, L. R. A. 1918A, 794, in which the testatrix gave her farm and wood lot in Augusta to be used as a home for unmarried women who had been employed in the straw industry in Massachusetts. The court found only a special gift without a general charitable intent and rejected the application of the *cy pres* doctrine.

Without question, the gifts under the fourth clause of the will were for public charitable purposes. The aged men, however, became beneficiaries only under the operation of a particular plan, which in the event cannot be carried out. The trust may not pass *cy pres* to other purposes linked with aged men of Belfast.

*Second:* Assuming *cy pres* were applicable and the court could properly frame a scheme for the trust, it is obvious that no one of the institutions could take the property. The very names of the institutions indicate purposes quite different from the purpose of the proposed Bagley Home for Aged Men. The Home for Aged Women, the Girls Home, and Goodwill Farm do not further the interests of aged men.

*Third:* There is a further and compelling reason why equity will not invoke the rule of "approximation" in this

instance. *Cy pres* is not applicable where there is a specific alternative gift effective on failure of the primary charitable gift. This principle, in our view, operates here to the advantage of the institutions.

We must find and give effect to the intention of the testator. The well established rule was stated by Justice Thaxter in *Cassidy, Guardian* v. *Murray, Trustee,* 144 Me. 326, 328, 68 A. (2nd) 390, in these words:

> "It is the intention of the testator which must prevail in the construction of a will. But that intention must be found from the language of the will read as a whole illumined in cases of doubt by the light of the circumstances surrounding its making."

Among the recent cases in which the rule has been applied are: *Knapp, Aplt. from Decree Judge of Probate,* 149 Me. 130, 99 A. (2nd) 331; *Strout, Trustee* v. *Little River Bank and Trust Co., Adm.,* 149 Me. 181, 99 A. (2nd) 342; *First Universalist Soc. of Bath* v. *Swett, et al.,* 148 Me. 142, 90 A. (2nd) 812; *Mellen, Jr., et al., Trustees* v. *Mellen, Jr., et al.,* 148 Me. 153, 90 A. (2nd) 818; *Dow* v. *Bailey,* 146 Me. 45, 77 A. (2nd) 567.

The testator intended, in our view, that on failure of the proposed "Bagley Home for Aged Men," the property should go to the named institutions for public charitable purposes. As we have seen, we need not decide whether a refusal by the City to accept the gift would necessarily have made the gifts over effective. We are here concerned not with refusal by the City, but with acceptance by the City followed by a failure of the principal gift. There is no reason to believe the testator intended that by its acceptance the City thereby destroyed the contingent gifts over to charity.

There is not the slightest indication that the testator desired under any circumstances to benefit his heirs. We conclude the testator in making gifts over for charity covered the possibility of a failure of the gift in the uncertain future. We conclude it was the testator's intention to make the institutions the beneficiaries upon the failure of the proposed home for aged men.

Accordingly, there becomes no occasion for the application of the doctrine of *cy pres,* assuming the gift for the proposed home for aged men revealed a general charitable intent.

In *Pennsylvania Co., Etc.* v. *Board of Governors,* 79 R. I. 74, 83 A. (2nd) 881, the Rhode Island Court in holding testamentary gifts to certain English hospitals failed upon nationalization of the hospitals, said at page 888:

> "However, in Section XI of his will the testator named the respondent churches as his residuary legatees saying: 'so that in case any of my preceding gifts, specially my gifts to Public purposes should fail * * * my property shall surely go, in such event, to the work of establishing the Knowledge & following of Jesus Christ among our American People.' Such provision in effect obviates the application of that doctrine (cy pres) since the testator himself shows clearly his own intent and the alternative disposition of his property in the event of the failure of the gifts referred to.

> "In the circumstances we see no reason why the above-expressed intent of the testator should not be carried out. It is generally held that when a testator makes a specific alternative bequest to take effect if a primary charitable one fails, the doctrine of *cy pres* is not applied, but the estate is distributed in accordance with the testator's express direction. * * * It may be noted that in the present instance there is other specific disposition and the alternate beneficiaries are also charities."

"Cy pres will not be applied where the settlor has made an express provision for an alternative disposition of his property, if the charity as he planned it proves impossible, inexpedient, or impractical. He may prevent the need for the application of cy pres by making a gift over in such case to a private donee or to another charity." 2A *Bogert on Trusts and Trustees*, Sec. 431, pg. 318. *Rhode Island Hospital Trust Co.* v. *American Nat. Red Cross*, 50 R. I. 461, 149 A. 581; *White's Estate*, 174 Pa. 642, 34 A. 321; *Board of Regents of State University* v. *Wilson*, 54 Colo. 510, 131 Pac. 422; 14 C. J. S. 516, Charities, Sec. 52(c) ; 10 Am. Jur. 676, Charities, Sec. 124; 169 A. L. R. 276; 2 Restatement, Trusts, Sec. 413(b) ; 3 Scott on Trusts, Secs. 399.2; 401.5. "If testator makes a specific gift over in the event that the legacy or devise in question is renounced or otherwise fails full effect will be given to such intention." 4 *Page on Wills* 156, Sec. 1412.

There is no objection to the gifts to the named institutions on the score of the rule against perpetuities. The rule is not applicable to a gift over from charity to charity. *Jones* v. *Habersham*, 107 U. S. 174, 185; 2 Restatement, Trusts, Sec. 401(f) ; 10 Am. Jur. 597, Charities, Sec. 18.

We hold, therefore, that the three named institutions take the residue. We must now determine what institutions in fact are named in the will.

The final point is whether the gift over to the Girls Home goes to the Children's Aid Society of Maine, or the heirs. No question arises about the Goodwill Home Association taking under the name of Goodwill Farm. The Children's Aid Society of Maine was organized in Maine in 1893 (P. & S. L. 1893, Chap. 459) "with full power to establish and maintain a home, or homes in Maine for friendless, destitute and needy children and for furnishing them with relief and assistance together with suitable mental and moral

training." From 1895 until September 1950 at Belfast and not elsewhere the Society maintained a home in accordance with its charter, and for a great many years "has been commonly known as the Girls Home, located in Belfast, Maine." If the Society had maintained its home for girls in Belfast, as was the case until September 1950, no question would have arisen. The Children's Aid Society of Maine is but the formal and legal name of the well-known Girls Home.

In 1951 the Society was authorized by the Legislature to sell "free from all claims of the state, the buildings and land at the girls' home in Belfast, * * * and to use the proceeds toward the construction of a substitute building on land owned by the Sweetser Children's Home in the city of Saco, county of York, for continuation of the work of the Children's Aid Society of Maine." *P. & S. L., 1951, Chap. 26.*

In the emergency preamble to the Act the Legislature said that "(the Society) cannot continue such (public charitable) purposes in its present location and with its present facilities" and that "it is desirable that its corporate purposes be continued without interruption."

The "substitute building," known as the "Belfast Cottage," was erected on land leased for a term of 50 years with the privilege of renewal for a like period. The building has always remained the property of the defendant Society. "Pursuant to an agreement and working arrangement with said Sweetser Children's Home, (the defendant Society) has paid over and continues to pay to said Sweetser Children's Home, certain sums of money out of its annual income, to maintain a home or homes in Maine for friendless, destitute and needy children and for furnishing them with relief and assistance together with suitable mental and moral training."

Reduced to its essentials we have a Society commonly known as the "Girls Home," ceasing to operate a girls' home

in Belfast, and shortly thereafter resuming operations in the "Belfast Cottage" owned by it and under the immediate management of the Sweetser Children's Home in Saco. Its charitable work was temporarily suspended, but not terminated. The Girls Home had not been limited to the assistance of girls from Belfast or vicinity. It was a state-wide home operated at Belfast. It is now a state-wide home operated at Saco. It is the same Society. *Knapp, Aplt. from Decree Judge of Probate, supra.*

In our view the physical location of the home for girls in Belfast was not a controlling factor in the testator's gift. We find no adequate reason for depriving the "friendless, destitute and needy children," to quote from the charter, of the benefits of the testator's generosity. We hold the gift was to the defendant Society.

A decree may be entered below providing (1) for the payment of reasonable counsel fees and expenses to be paid out of the trust property and allowed the City in its probate account; (2) for the transfer of the balance of the assets of the trust, both real and personal, to the defendants Belfast Home for Aged Women, Good Will Home Association, and Children's Aid Society of Maine, in equal shares; (3) for the filing by the City of Belfast of a final account in the Probate Court upon the allowance of which the City shall be discharged from further responsibility as trustee under the will. The entry will be,

*Bill sustained.*

*Decree in accordance with opinion.*