## HOOPES *v.* DUNDAS.

Testator bequeathed to his executors, an annuity to be paid to the widow of his deceased son during all the term of her natural life, *if she so long remain his widow and unmarried*, with a general devise over of the residue of his estate ; the devise being on condition in restraint of marriage, is absolute, and the condition void.

A limitation over, on marriage of the devisee, is valid.

APPEAL from the Nisi Prius in Equity.

*Feb.* 12.   Case stated as on a bill and answer. The complainant claimed under the following clause in the will of Pratt : " Item, I do give to my executors, hereinafter named, and the survivors or survivor of them, and the executors and administrators of such survivor, an annuity or yearly sum of $600, to be paid to Sophia Pratt, the widow of my deceased son Edmund Pratt, in quarterly payments, during all the term of her natural life, if she so long remain his widow unmarried." The residue of his estate was devised over. Sophia, the annuitant, had since married, and the question was, whether she was entitled to receive the annuity after her marriage.

The decree directed the payment to her separate use.

*T. I. Wharton*, for appellants.—The question is, whether a man can provide for the support of his son's widow, while she remains a widow. The idea, that all conditions in restraint of marriage are void, was derived from the civil law, and is wholly inapplicable here. It prevails in England only in the bequests of personalty, and that from the necessity of conforming to the ecclesiastical law, into which it was introduced without reason, as was said by Lord Alvanley: 3 Ves. 96. Our pension laws show this does not apply here. It is conceded that a limitation over is valid: 2 Hare, 580. The words here are apt words of limitation : Bac. Abr. *Cond.* H. Cro. Eliz. 414; Pop. 99; Moor. 400; Golds. 179; Owen, 107; Roll. Abr. 411, 843. Under similar words Lord Hardwicke, in 2 Atk. 321, held the widow only entitled during widowhood. In this case, by the general residuary devise, the annuity is charged on the land, and the rules of the common law apply; 1 Stor. Eq. § 288: 1 Atk. 375. In 3 Whart. 585, there was a devise to separate use; and Marples *v.* Bainbridge, there relied on, is denied to be law, in 1 Rop. on Leg. 557–8; 2 Will. Ex. 792–3. In Grace *v.* Webb, 12 Jurist, 987, Lord Cottenham held, that a . proviso reducing an annuity in the event of marriage was not void. He also objected to the decree—that there was no authority to make the decree to the separate use of the annuitant.

*Meredith*, contrà.—This is a condition; the words used are the same as were said in 3 Whart. 585 to be the most apt for that purpose: 2 Atk. 321, was a limitation.(*a*) A general devise over of the residue, is insufficient to show that a limitation was meant: 1 Atk. 362; there must be a special direction that the legacy shall fall into the residue on the happening of the condition: 3 Wht. 584; 3 Atk. 364–8; 3 Merv. 118. The only doubts that have ever existed have been, whether a limitation is valid, Amb. 209, 9 Sim. 615, and what is the effect of conditions, subsequent or precedent, and the distinction between legacies charged on the realty or out of personalty: 3 Ves. 96; 2 Hare, 580; 3 Whart. 575. But as to conditions subsequent in restraint of marriage, there has never been a doubt of their invalidity at common law. The judgment of the K. B. on this point, in 4 Burr. 2225, was affirmed in the Exch. Wilm. Judgts. 364, and the same principle was decided by the Chancellor: 2 Vern. 215. There are

(*a*) The authorities referred to in Bac. Abr. are one case reported by several persons, and the point here did not arise.

numerous other cases to the same point: Willes, 94; Skin. 286; 6 Mass. 178; 9 East, 170; 3 Whart. 575; Middleton *v.* Rice, per Kennedy, J., at N. P.; 6 L. J. 229. Grace *v.* Webb is decided on the ground of a contract, an invention not thought of in 4 Burr., which was a covenant, 2 Vern., the case of a bond. But no case can afford a more striking illustration of the rule than 2 Hare, 579, where, though the evident object was to protect an insane daughter, a direction to pay to third persons in the event of her marriage, was held to be nugatory.

*Feb.* 19.   GIBSON, C. J.—The point in this case is a narrow one. Though the bequest of an annual sum to a woman may be restrained to her marriage, by words of conditional limitation, McIlvaine *v.* Gethen settles the law with us, that it cannot be done by a condition subsequent, where there is no bequest over; and the question here is a single one—is this a condition or a limitation? The testator gave his executors an annuity, "to be paid to Sophia Pratt (widow of his son), in quarterly payments, during all the term of her natural life, if she so long remain his widow unmarried." Not to stickle about words, this bequest is the same in substance, as it would have been had the testator said, I give my daughter-in-law an annuity for life; but, if she marry again, it shall cease. The words will bear no other interpretation; for, with a single exception, the word " *si* " has always been held to make a condition. " *Si continget* " are put in the text-books, among the examples of words undoubtedly proper to create a condition, even at the common law. The struggle between the common-law judges and the doctors of the canon law, has somewhat jumbled a few of the earlier cases together, so as to mar their consistency. In Reshton *v.* Cobb, for instance, a bequest to trustees to authorize a widow to receive dividends "so long as she shall continue sole and unmarried," was held to be a bequest on condition, though the word " *dum,*" " *dummodo,*" or " *quamdiu,*" is instanced as a term of art proper to create a limitation. On the other hand, there is, at least, a *dictum* that the word " *si* " may create a limitation. In Sawyer *v.* Hardy, variously reported in several books, a woman was lessee for forty years, *sub hac conditione* " *si* " *quod vixeret vidua et inhabitaret super premissos ;* and it was held that, the sentence being incomplete, the words made neither a condition nor a limitation, but were insensible and void. That was the point adjudicated, and, so far, the case is authority. But it was said, that, if a lease be for twenty years, *si tamdiu inhabitaret super*

*premissos*, the lease is determined by the tenant's death. Undoubtedly it is; for there is no legal policy in the way of such a condition; and it is plain that it was not viewed as a limitation. In Popham's report of the case, he says that the other judges concurred with him; but Owen, in his report of it, says that the decision was Popham's own. Whether it was the one or the other, it was a *dictum*, and one which did not touch the condition not to marry, for the woman had died unmarried; and the question was, whether the estate had determined by her death. Grace *v.* Webb is also wide of the mark. It was not pretended by any one, to be a case of limitation. The Chancellor conceded that the proviso referred to made a condition; but, very strangely, assumed that it was a condition precedent. If it were so, it would be difficult to conceive how the annuity could have vested before the woman's death. His assertion, that there was not an unconditional grant for life, in the first instance, is not borne out by the words of the deed. There was an express grant for life, "subject to the *proviso*" thereinafter contained; and the breach of the condition could operate only as a defeasance. The whole case exhibits a determination, at any sacrifice of precedent, to get away from the doctrine of the civil law, though the facts before him were pregnant with proofs of its superiority in this particular. The Chancellor decreed, in effect, that there was nothing in the proviso to render it void on grounds of policy. Yet the grantee of the annuity was the kept mistress of the grantor, as well as the mother of two illegitimate children by him; and the pension was given her on condition, at least in part, that she would not desert his impure bed for the lawful bed of a husband! I like not either the law or the morality of that case. But, as a precedent, the decree of the Lord Chancellor binds us no more than does the opposite decree of the Vice-Chancellor; and, fortunately, we are bound by neither. We are not going to overturn our own decision here, because it has pleased the Chancellor to overturn the old decisions there; and we are, consequently, bound to say, the condition in this case was *in terrorem.*

Decree affirmed.