## Alexander's Estate.

Argued March 31, 1941. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

472

*Kenneth Buffington,* of *Hunter & Buffington,* for appellant.

*William G. Gault,* with him *John W. Cost* and *Dunn & Moorhead,* for appellees.

OPINION BY MR. JUSTICE PARKER, April 14, 1941:

In this proceeding for partition of real estate in an orphans' court it became necessary to construe the will of Robert P. Alexander, deceased, in order that the interests of the respondents in the land might be determined. The construction of the will is the sole question raised on this appeal.

Testator died testate on December 5, 1939, seised of income producing real estate of the value of more than $65,000 and possessed of a small amount of personal property. He was survived by his widow, who was his second wife, their one son, Arthur B. Alexander, between twenty-one and thirty years of age, and three sons by a former marriage, William H., Robert P., Jr., and Harold V. Alexander, all over thirty years of age. The widow elected to take against the will and filed her petition for partition of the real estate. The court below awarded a one-third interest in the real estate to the widow and as to that part of the award there is no dispute. The remaining two-thirds was awarded to the three sons by his first marriage, subject to a charge not here of importance, and the claim of Arthur B. Alexander to an interest in the real estate was rejected. Arthur has appealed.

To make clear the claim of the appellant it is necessary to refer to the terms of the will. After certain bequests to the wife and others, the will provided that the remainder of his estate should be rented and maintained, and that "the income after the foregoing has been taken care of is to be divided between my sons,

Wm. H.—Robt. P., Jr.—Harold V.—and Arthur B. Alexander. After they in turn shall have reached *there* 30th Thirtieth Birthday or are 30 years Old". Appreciating the right of his widow to take against the will, he then provided for that eventuality as follows: "In the event that my Wife Margaret Contests my Will or is not Wholly satisfied and offers any legal Proceedings then my Son Arthur B. Alexander by her shall receive the sum of $5.00 Five and 00/100 Dollars as his share only and nothing more."

It is the theory of the appellant that the condition in the clause last mentioned "is subsequent, *in terrorem* and, therefore, void." In support of the contention that there is a void condition subsequent, he cites *Hoopes v. Dundas,* 10 Pa. 75; *Cornell v. Lovett's Executor,* 35 Pa. 100; *Chew's Appeal,* 45 Pa. 228; *Cochran v. Cochran,* 127 Pa. 486, 17 A. 981; *Drace v. Klinedinst,* 275 Pa. 266, 118 A. 907. He also suggests that there is not any residuary clause in the will sufficient to take the interest that would otherwise have gone to him. We fail to find any support for either the premises or the deductions made. As the court below pointed out, it is plain that the testator intended to provide an equitable distribution of the estate between two groups, the children of his first wife on the one hand and his widow and their child on the other hand: cf. *Kahl's Estate,* 336 Pa. 376, 9 A. 2d 346. It is indisputable that testator undertook to provide for two situations that might arise after his death, that his wife should agree to take what he first provided or that she should not be satisfied and should exercise her legal right to take against the will. He had the same legal right to provide for those contingencies as she had to make an election to accept or reject the provisions of the will affecting her.

In *Carr's Estate,* 138 Pa. 352, 22 A. 18, the will provided two plans of distribution, one if the widow accepted under it, another if she did not. She was at perfect liberty to accept or not. It was said in that

case (p. 353) : "The rule 'in terrorem' was derived from the civil law, and seems to be as follows: 'A condition subsequent, which is against public policy, public decency or good manners, will be treated as in terrorem, unless there is a specific devise over.' In adopting it, the English and American courts have stricken out that part relating to good manners." The testator gave to the son of his wife by a former marriage a bequest of $20,000 "upon the condition, however, that my [his] said wife shall [should] accept the provisions of" his will and elect to take under it. The condition was upheld and it was held that the son was not entitled to the legacy. In that case, just as in the one we are considering, the widow was at perfect liberty to accept the provisions of the will or reject them. No penalty could be visited upon her for refusing to comply with the conditions upon which the legacy was made to the son or sons and it was not in terrorem.

In *Mohn's Appeal*, 76 Pa. 92, testator, after providing for his widow, a second wife, gave his residuary estate to a grandchild, son of a deceased child of theirs, and to six children by a first marriage. He then provided that in the event that the widow should claim her exemption of $300 in addition to what was given her by the will, such sum should be deducted from the share of the grandson. This court held that the $300 exemption claimed by her should be taken out of the share of the grandson. From this it is apparent that the alternate provisions of the will we are considering were not violative of public policy or public decency.

The appellant's assertion that the testator intended that the provision we are considering should operate as a condition subsequent to the vesting of Arthur's estate is equally untenable. The distinction between conditions precedent and conditions subsequent as used in a statement of the doctrine relied upon is, at best, tenuous and technical. In *Holbrook's Estate*, 213 Pa. 93, 96, 62 A. 368, we said: "It is a reproach to the law

that of two donors intending to do exactly the same thing one shall succeed and the other fail as a violator of law merely because one scrivener knew what he was about and wrote 'so long as the donee remains unmarried,' and the other was ignorant or careless and wrote 'for life if so long the donee remains unmarried.' " While the will of the testator in this case was not precise in the use of legal expressions and was inartistic, it is manifest that he intended, as we have heretofore said, to make alternative provisions for Arthur in order to avoid what he considered an inequitable division between the two groups in his family. Until the widow made her election it could not be determined which would be operative. It is clear, however, that no interest was intended to vest in Arthur and no distribution could be made to him until the widow had made her election. Her election to take under the will was a condition precedent to his participation in the remainder along with his brothers. Arthur was entitled to five dollars and nothing more.

We do not believe any other intent can be gathered from the will, than that testator intended to make the three sons by his first marriage his residuary legatees. Such interpretation is in accord with the words of the will and the circumstances disclosed. That intention governs: *Swentzell's Estate*, 294 Pa. 261, 262, 144 A. 129.

Considering the election of the widow as a condition, it did not violate public policy or public decency, the condition was precedent and not subsequent, and there was a residuary clause. The appellant is left without premises for his argument. This case is ruled by *Mohn's Appeal* and *Carr's Estate*, cited above.

The decree of the orphans' court is affirmed at the costs of the appellant.