## Poser Estate

*Henderson & Terrizzi*, for accountant.

*Heffner & DeForrest*, for exceptant.

SHEELY, P. J., specially presiding, July 10, 1958.— This matter is before the court on exceptions to the report of the auditor appointed to dispose of exceptions to the first and partial account of Sylvia Halpern, executrix of the will of Jonas Poser, deceased. The sole question presented is whether the children of Lester

Poser are entitled to participate in the distribution of the estate of Jonas Poser.

In the seventh paragraph of his will dated June 8, 1948, Jonas Poser devised certain real estate to Sylvia Halpern, trustee, to collect the rents and proceeds for a period of 10 years, and then to sell the property and, following certain directions to the trustee and executrix, a bequest of the proceeds was given to four of his five daughters, each of whom would receive 20 percent thereof, and to Leonard Poser, Raisa Poser (now Robinson) and Jay Poser, children of Lester Poser (son of Jonas) and Tybie Poser, who would receive the remaining 20 percent. By the ninth paragraph of the will the residue of the estate was to be distributed in the proportion of a one-sixth interest to each of his five daughters and the remaining one-sixth interest to the children of Lester Poser.

By a codicil to his will, dated July 2, 1949, testator provided that: "If the estate of Lester Poser, either by Tybie Poser, or by any of Lester's children, or in any other manner or by any persons, makes claim to ownership of any interest in the store business at 211-6th Street, Huntingdon, Pa., or in any way denies that I, Jonas Poser, am the sole owner thereof, then, I revoke and declare void all bequests and provisions in my aforesaid Will and Codicil in favor of Leonard Poser, Raisa Poser and Jay Poser, so that the children of Lester Poser shall receive nothing whatsoever from my estate. I make this additional provision because since I executed the will of June 8, 1948, Tybie Poser, as the legal representative of the estate of Lester Poser, has taken the position that Lester Poser was a partner with me in said business and that he had a ½ interest in said business. If this contention or claim is made or pressed in any way following my death, then Sylvia need not proceed with any litigation in the matter in

denial of said claim but nothing shall be paid from my estate to the heirs of Lester Poser, or to his estate, or to his widow, Tybie Poser."

During his lifetime Jonas Poser was interested in a business conducted in Huntingdon under the names of Poser Department Store and Jonas Poser and Son. It also appears that prior to his death on March 22, 1948, Lester Poser was also interested in the business. It does not appear how the relationship between Jonas Poser and Lester Poser commenced or what specific agreements they had between themselves. It does appear, however, that each party received the sum of $50 each week from the business and that Jonas Poser drew checks on the business account for his personal use. It also appears that partnership income tax returns were filed for the business and that Jonas Poser referred to the "partnership" in his individual income tax returns. After the death of Lester Poser the weekly checks for $50 previously paid to him were paid to his widow and sole legatee, Tybie Poser, and partnership income tax returns were thereafter filed listing her and Jonas Poser as partners. The income tax for both parties was paid from the business. No division of profits beyond the weekly checks of $50 each was made.

After the death of Lester Poser, Jonas Poser denied that there was a partnership although he continued to draw the weekly checks to Tybie Poser. Tybie Poser always took the position that Lester Poser owned a one-half interest in the business and the business continued to pay the income tax for both parties. Apparently she did not discuss the situation at length with Jonas Poser, but she did have a conference with his daughters and they reached an understanding that the daughters, as the surviving children of Jonas, would, after his death, recognize ownership with Lester in a one-half interest in the business, but Jonas was not

a party to that discussion. After the death of Jonas Poser on December 26, 1951, his executrix inventoried his interest in the business as a one-half interest and she considered that the other one-half interest was owned by Tybie Poser. Immediately after the death of Jonas Poser, Tybie Poser met with his daughters and said she would like to buy the other one-half of the store. As a result of these discussions Tybie Poser did purchase the one-half interest of Jonas Poser by a bill of sale dated January 2, 1952, actually signed on March 15, 1952, and took possession as of that date.

While Jonas Poser did many acts consistent with the existence of a partnership and executed the partnership income tax returns and paid the income tax from the business account, he also denied the existence of a partnership and drew some of the money from the account for his own use. As we have indicated, there is nothing to show how the business relationship between Jonas and his son, Lester, arose or what was the understanding between them, but, under the testimony, Jonas could not have successfully denied the existence of a partnership. It is also clear that the daughters of Jonas Poser felt that Lester and his estate should be recognized as owning a one-half interest in the business, and that Tybie Poser always asserted her ownership thereof.

It was against this background that Jonas Poser executed the codicil to his will on July 2, 1949, in which he provided that if the estate of Lester Poser made claim to any ownership in the store business, or in any way denied that he was the sole owner, then he revoked all bequests in favor of the children of Lester Poser. He clearly stated his reason for the codicil to be that Tybie Poser had been taking the position that Lester Poser was a partner in the business. But he did not want the matter litigated. He provided that if the claim was made in any way his executrix need not

litigate the matter, but that nothing should be paid from his estate to the heirs of Lester Poser.

What occurred after his death was exactly what he anticipated. Tybie Poser did claim a one-half interest in the business as the sole legatee of Lester Poser, and she offered to, and did, purchase the remaining one-half interest. That the executrix under the will of Jonas Poser and the remaining daughters of Jonas recognized the claim is immaterial. Testator had anticipated that and had provided that the executrix need not proceed with litigation in denial of the claim. He gave the heirs of Lester Poser a choice; they could have either a one-half interest in the business or they could share in his estate. They could not have both.

The will of testator clearly created a condition precedent to the vesting of an estate in the children of Lester Poser, and when Tybie Poser claimed a one-half interest in the business and purchased the remaining one-half interest, the condition was breached. The situation is governed by the rule followed in Alexander's Estate, 341 Pa. 471 (1941). In that case testator bequeathed the residue of his estate to three sons by a former marriage and one son by a second marriage. He then provided that in the event his wife was not wholly satisfied and offered any legal proceedings, her son should receive $5 as his share and nothing more. The widow elected to take against his will. There, as here, it was contended that the condition was subsequent, in terrorem and, therefore, void. The court pointed out that testator undertook to provide for two situations that might arise after his death, that his wife should agree to take what he first provided, or that she should not be satisfied and should exercise her legal right to take against the will. "He had the same legal right to provide for those contingencies as she had to make an election to accept or revoke the provisions of the will affecting her."

In this case Jonas Poser provided for two situations. If the entire business were an asset of his estate he desired Lester's children to participate in the estate. If Lester's family received one-half of the business as part of Lester's estate, he wanted them to receive nothing from his estate.

Exceptants contend that to comply with the condition of the codicil Tybie Poser would be compelled to give up that which was legally hers and that, therefore, the condition was in terrorem and void. In Estate of William Carr, deceased, 138 Pa. 352 (1890), it is stated: "The rule 'in terrorem' was derived from the civil law, and seems to be as follows: 'A condition subsequent, which is against public policy, public decency or good manners, will be treated as in terrorem, unless there is a specific devise over'. In adopting it, the English and American courts have stricken out that part relating to good manners."

We do not construe the condition of the codicil to be in terrorem. In the first place the condition is precedent and not subsequent. Furthermore, there is nothing against public policy or public decency. It is not against public policy in Pennsylvania for a parent to disinherit his children and "if a testator may disinherit his children, he may also condition their legacies so that the happening of a certain event will result in this disinheritance": Houston Estate, 371 Pa. 396, 399 (1952). Nor is it against public policy for a testator to provide that no child who presents a claim against his estate not evidenced by a writing dated after the date of the will should receive any share of his estate, even though a child had a valid claim dated prior to the date of the will (Berlin's Estate, 74 Superior Ct. 455 (1920)), or to condition a gift upon the beneficiary creating in his own property a life estate to himself with remainder to his children: Johnson's Estate, 47 Lanc. 141 (1940).

As stated by the auditor who has filed an excellent report: "After reading the Will and carefully listening to the testimony, it is apparent that it was Jonas Poser's firm conviction, whether rightly or wrongly, that he owned the business known as Jonas Poser and Son. He desired his grandchildren to share in the estate in place of their father, Lester Poser, who had predeceased Jonas Poser . . . , on the condition that he did not desire them to share both in his estate and also as owners of the one-half interest in the business, which he knew was apparently being claimed by his daughter-in-law, Tybie Poser, and her family as a partnership interest." He was entirely within his rights in making the bequests to his grandchildren contingent upon no claim to the business being made by any persons connected with Lester Poser.

In their brief, exceptants suggest a number of questions which they contend are before the court. The first group of questions is based on the contention that no claim was ever made by the estate of Lester Poser or by Tybie Poser or any of Lester's children that Lester had an interest in the store business or that they ever denied that Jonas Poser was the sole owner thereof. The answer to this contention is that Tybie Poser and the other heirs of Lester always contended that Lester was a partner in the business. They listed his partnership interest in the inventory of his estate, and immediately after his death Tybie Poser went into the store claiming to be a partner. She negotiated with the daughters of Jonas Poser concerning the interest of Lester in the store business, and in this proceeding exceptants are contending that Lester was actually a partner. The second group of questions suggests that the condition of the codicil required the beneficiaries to disprove the existence of a fact or a condition that testator himself had created and which was recognized by testator and his heirs, to wit, the existence of the

partnership. The answer here is that the condition of the codicil did not require the beneficiaries to disprove anything as a condition to sharing in the estate. All that it required was that they relinquish any rights they might have in the partnership which testator denied existed. It gave them the choice of asserting those rights or of accepting the benefits of the will.

Exceptants further contend that Jonas Poser, by the codicil to his will, attempted "to reach out from the grave and do that which he knew he could not do, and which he had not desired to attempt to do during his lifetime." This is not a correct statement. Testator did not attempt to destroy the partnership if one existed. He specifically directed that his executrix should not contest such a claim if it were made. He did not recognize, as contended by exceptants, that he had created a partnership but, if he had, that was the most he desired to do for Lester Poser's heirs. They had the right, under the codicil, either to assert the partnership interest in the business, or to claim the benefits of the will.

While it is unnecessary to determine testator's motive in executing the codicil of July 2, 1949, we think that the testimony demonstrates this reasoning. As we have indicated, there is nothing to show how the business relationship between the father and son commenced. Testator had a previous will dated March 30, 1929, in which he directed that all of his merchandise, stock and other personal property should be reduced to money and that the balance after payment of debts should be divided equally among his seven children. On November 7, 1944, he executed another will in which he bequeathed his department store business, together with all merchandise and fixtures, to his son, Lester Poser, "absolutely and without restriction." He emphasized this by repeating that the business should belong to Lester and he should have the absolute control

thereof, and that it was his intention that the business should belong to Lester without restriction and that he should handle it, etc., in any way he might desire, without accountability to anyone. It was a family business and since Lester had entered the business and helped to develop it, he apparently wanted Lester eventually to own the business. Lester died on March 22, 1948, and the last will was executed on June 8, 1948, in which he directed the executrix to dispose of his retail merchant business either at public sale or private sale. From this it seems clear that Jonas Poser wanted Lester Poser to continue the family business and that he was willing to consider him as a partner, but he was not willing to make the same provision for Lester's family.

We conclude that the learned auditor correctly disposed of all questions before him.

And now, July 10, 1958, the exceptions to the report of the auditor in the above matter are dismissed and the report is confirmed absolutely and the executrix is directed to make distribution in accordance therewith. Exceptions to this order are noted on behalf of exceptants.