## McCall et al. *v.* McCall et al., Appellants.

*Will—Vested and contingent devises.*

Testator gave his real estate to his wife during widowhood and directed as follows: "And the remainders and reversions of all my property not otherwise disposed of, together with that herein mentioned to the use of my wife, shall after her death revert to and become the property of my son, providing he shall remain with my wife and myself until our decease; and provided also that, two years after the decease of my wife, if she survives me, he shall pay to my other children or their heirs the amounts herein mentioned, to wit," etc. At the time the will was written the son was living with his parents, and was the only child at home. *Held*, that the son took a vested remainder in the real estate.

Argued April 23, 1894. Appeal, No. 5, Jan. T., 1894, by defendants, David M. McCall et al., heirs at law of Samuel McCall, deceased, from judgment of C. P. Crawford Co., May T., 1892, No. 73, on verdict for plaintiffs, S. T. McCall et al., heirs at law of Joseph McCall, deceased. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Ejectment. Before NOYES, P. J., specially presiding.

At the trial, it appeared that plaintiffs were the heirs at law of their father Joseph McCall, deceased, and claimed that their father took a vested remainder in the real estate in controversy under the will of his father, Samuel McCall, deceased. Defendants were other heirs of Samuel McCall.

The material parts of the will of Samuel McCall were:

"Item. I direct that money due me by note or otherwise shall be used for the payment of debts, and remainder, if any, be kept on interest—the interest of which shall go to the sole maintenance of my wife Martha so long as she remains my widow.

"Item. I give and bequeath to my beloved wife, Martha McCall, the remainder of all my household furniture, also all my personal property and the homestead farm of one hundred acres, more or less, together with the appurtenances; the use, improvement and income of the same so long as she remains my widow and wishes to reside on the farm, and if she removes

therefrom the rental of the farm shall go for her separate maintenance, and the personal property shall be disposed of to the best advantage, the proceeds put upon interest and the interest thereon to be applied to her sole use and needs, and whatever other property I may have at the time of my decease, whether real, personal or mixed, to her use as long so long as she remains my widow, or during her natural life, and the remainders and reversions of all my property not otherwise disposed of, together with that herein mentioned to the use of my wife Martha, shall after her death revert to and become the property of my son Joseph F. McCall, providing he shall remain with my wife Martha and myself until our decease, and provided also that two years after the decease of my wife Martha, if she shall survive me, he shall pay to my other children or their heirs the amounts hereinafter mentioned, to wit: To the heirs of James V. McCall, James and Louise, one hundred dollars. To the children of Mary Ellis, twenty-five dollars. To the children of Phœbe Hotchkiss, twenty-five dollars. To Nancy McConnell, one hundred dollars. To David M. McCall, one hundred dollars. To Levi L. McCall one hundred dollars, the same to be paid out of my estate.

"Item. To my grand-son Clinton C. Hotchkiss I give and bequeath fifty dollars and one suit of clothes worth twenty-five dollars, the same to be paid to him when he is eighteen years old, provided he shall remain on the farm with my wife Martha until he is eighteen.

" And I do hereby constitute and appoint David M. McCall and Levi L. McCall (my sons) my executors of this my last will and testament."

The court directed a verdict for plaintiffs subject to the question of law reserved whether plaintiffs were entitled to judgment. Subsequently the court entered judgment for plaintiffs, in the following opinion by NOYES, P. J.:

" The determination of the point reserved depends upon the construction of the following clause in the will of Samuel McCall : ' And the remainders and reversions of all my property not otherwise disposed of, together with that herein mentioned to the use of my wife, Martha, shall, after her death, revert to and become the property of my son, Joseph F. McCall, providing he shall remain with my wife Martha and myself, until our

decease; and provided also that two years after the decease of my wife Martha, if she shall survive me, he shall pay to my other children or their heirs the amounts herein mentioned, to wit:' etc.

"If the first proviso to this devise constitutes a condition precedent to the vesting of the estate in Joseph then it can never vest in him or his heirs, because his death in the lifetime of Martha McCall had made its performance impossible; but if this condition be subsequent, then, its fulfillment having become impossible by the act of God, the condition is defeated and the estate becomes absolute in the plaintiff's wards, who are the heirs at law of Joseph. Jarman on Wills, 5 Am. ed. 520; Wash. Real Prop., 3d ed. 447, cases cited.

"If the performance of the condition is required before the vesting of the estate, the condition is clearly precedent, as in Den v. Messenger, 4 Vr. 499, cited in 2 Jarman, 513, note 5, where the condition was 'That he remain with me and continue to conduct himself in a proper manner.' On the other hand, if the estate is to vest before the time fixed for the performance of the condition, the condition is subsequent, as in the second proviso to the very devise in question requiring payment of certain legacies two years after the death of the widow.

"So much is quite clear, but the authorities cited by counsel shed but a dubious light upon the question whether this particular condition falls within the one class or the other. There is no certain rule for the determining of such a question nor any appropriate words, the use or disuse of which is decisive. The same words may import a condition precedent in one will and subsequent in another, being controlled by the context. The question always is whether, taking the whole will together, it was the intention of the testator that no estate should vest in a devisee until the terms of the condition were performed, or whether he intended the nonperformance of the condition to defeat an estate previously vested.

"Bringing the whole will of Samuel McCall into view we find his primary and dominant purpose to be to provide for his wife during her widowhood. He expected to die first and certainly puts all his estate at her disposal, except the legacy to Clinton Hotchkiss, and this is conditional upon his 'remaining on the farm with my wife Martha until he is eighteen.'

" He next undertakes to dispose of the estate after the death of his wife. Joseph was the only child at home; he had returned at his father's request; the testator desired him to remain during the lives of his parents; and to him he gives the whole estate at his mother's death, subject to the payment of the pecuniary legacies and provided he does remain 'until our decease.' The language of the devise to Joseph is not present, but future. It does not say, 'I give' or 'devise,' nor use any other term importing an immediate estate, but the words are 'shall, after her death, revert to and become the property of my son Joseph,' etc. The terms of the condition require that Joseph shall remain with the testator until his death as well as with his wife until her death. To this extent at least the condition must be precedent, since no estate can vest until the testator's death, and if the condition be then broken it can never vest. Den v. Messenger, supra.

" At the time of writing the will the testator could not know whether he would survive his wife or his wife survive him. Had the wife died first, the condition must necessarily have been performed, if ever, before the vesting of the estate in Joseph. Moreover, it is in any event required to be performed before the estate can vest in enjoyment according to the literal language of the devise, for this cannot happen until the testator and his wife are dead. The devise appears to be in consideration of the performance of the condition, that is to say, the motive for the devise appears to be to reward Joseph for remaining with his parents during their lives, and this circumstance is one of those which have been held to be indicative of an intention to make the condition precedent rather than subsequent.

" On the other hand, the nature of the condition favors the more liberal construction. It requires for its performance the entire lives of the testator and his wife. It depends not only upon the devisee, but his mother also, for he could not remain with her, whether upon the farm or elsewhere, without her consent. At the time the will was drawn Joseph was in the act of performing the condition—he was living with his parents —'remaining' with them. The condition requires nothing to be done, but simply the continuation of an act in progress at the time the testator penned his will. Again, the absence of

any limitation over indicates an intention to make a present and positive disposition rather than a future conditional one. The phraseology of the devise to the widow indicates that the testator regarded her interest as a use in the popular sense, rather than a vested property, and it points to his intention to vest the ownership in Joseph.

"Moreover, while the condition must of necessity be performed in part in testator's lifetime, and hence before the estate could vest, the possibility of its vesting before the full performance of the condition appears to be present and may be presumed to have been in the mind of the testator. The limitation to the widow is for life or widowhood, and hence her estate would terminate at her remarriage, if such an event occurred, and at her death at all events. The estate is devised to Joseph after her death without any express mention of the marriage of his mother, but, as was said in Burd v. Burd, 40 Pa. 182, the life estate and the remainder naturally go together in the mind of a testator, and, having limited the duration of the particular estate, he must be presumed to refer to that in fixing the commencement of the estate in remainder though he mentions only one of two events upon which the termination of the particular estate depends. This reasoning we think is stronger in the case in hand, where the estate in remainder is expressly limited to take effect at the death of the tenant durante viduitate, than in the English cases of Luxford v. Cheeke, 3 Lev. 125, and Gordon v. Adolphus, 3 Bro. P. C. 306, cited in 1 Jarman, 414, in which the limitation was upon remarriage only. And these cases seem to be founded on better reason than Augustus v. Seabolt, 3 Metc. 156, also cited by the same author, where the rule, that courts will not provide by construction for a contingency overlooked by the testator, was applied to produce a contrary result. It is precisely because the contingency of death or marriage, as the case may be, was not overlooked, as is shown by the devise of the particular estate, but it was merely omitted in the penning of the devise in remainder by manifest inadvertence, that the words are supplied by intendment.

"We must, of course, in searching for the testator's intention, put ourselves as far as possible in his shoes at the time the will was drawn. The possibility of Joseph dying before his mother does not appear to have been in his mind, but if he lim-

ited the estate to Joseph so that it might vest in him in possession and enjoyment in the lifetime of his mother upon her remarriage, this strongly points to an intention that the devise to Joseph should not await full performance of the condition for its vesting.   The fact that another condition plainly subsequent is written in immediate connection with the one in question, without more clearly marking a distinction between them, is another straw pointing the same way.   None of the considerations which we have mentioned are, however, conclusive on either side.   Weighing them together the matter continues doubtful.   In such a case the considerations of public convenience which cause courts to lean in favor of vested rather than contingent devises ; to avoid if possible any construction which will leave the fee in abeyance ; and, where the words are capable of carrying the whole estate, to refuse to presume that the testator intended a partial intestacy, are decisive.   Putting these into the scale the beam turns in favor of the plaintiffs."

*Error assigned* was entry of judgment as above.

*Pearson Church*, for appellants, cited : 2 Jarman on Wills, 5th Am. ed. 509, 513, 520 ; Theobald on Wills, 263 ; Finlay v. King, 3 Pet. 346 ; 2 Redf. on Wills, 662, 664, 685 ; Acherley v. Vernon, Willes' R. 153 ; Lamb v. Lamb, 8 Watts, 184 ; Moore v. Smith, 9 Watts, 403 ; Campbell v. McDonald, 10 Watts, 179 ; Seibert's Ap., 13 Pa. 503 ; Gilliland v. Breden, 63 Pa. 393 ; Letchworth's Ap., 30 Pa. 175 ; Fry v. Porter, 1 Mod. 300 ; Cary v. Bertie, 2 Vern. 333 ; Olney v. Hull, 21 Pick. 311.

*C. W. Tyler, Humes & Thomas* with him, for appellees, cited : Still v. Spear, 45 Pa. 166 ; Seibert v. Wise, 70 Pa. 147 ; Provenchere's Ap., 67 Pa. 463 ; Reck's Ap., 78 Pa. 432 ; Sheetz's Ap., 82 Pa. 213 ; Rewalt v. Ulrich, 23 Pa. 388 ; Culin's Ap., 20 Pa. 243 ; Manderson v. Lukens, 23 Pa. 31 ; Letchworth's Ap., 30 Pa. 175 ; Lantz v. Trusler, 37 Pa. 482 ; McClure's Ap., 72 Pa. 414 ; Chess's Ap., 87 Pa. 362 ; Burd v. Burd, 40 Pa. 185 ; Corbin v. Wilson, 2 Ash. 188 ; King v. King, 1 W. & S. 205 ; 2 Jarman on Wills, 5th ed. 440 ; Smith v. Tuit, 127 Pa. 341 ; McCue v. Johnston, 25 Pa. 806 ; Johnston v. McCue,

34 Pa. 180; Jarman on Wills, 5th Am. ed. 444; 3 Ib., pp. 705–9, rules 4, 10, 14, 16, 21, 24.

PER CURIAM, May 7, 1894:

In this case, a verdict was taken for the plaintiffs subject to the opinion of the court on the question of law reserved: Whether, under the will of Samuel McCall, Joseph McCall took a vested estate in the farm in question, which at his death descended to his children, etc.?

That question was rightly resolved in favor of the plaintiffs, and hence there was no error in entering judgment on the verdict in their favor. The subject has been so fully and carefully considered by the learned judge, who specially presided at the trial, that further comment is unnecessary.

The judgment is affirmed on the opinion of the learned president of the 37th judicial district.