# Drace et al. *v.* Klinedinst, Appellant.

*Wills—Devise—Restriction on alienation—Particular religion— Conditions—Limitations—Freedom of conscience—Constitutional law.*

1. The policy of the law is to keep the alienation of land free from embarrassing impediments, and it endeavors to strip devises and grants of restrictive conditions.

2. If the language of the condition is not clear, or is hostile to a state policy in any form, it is not given effect.

3. Conditions subsequent are always strictly construed when the happening of the event closes on otherwise absolute fee estates.

4. Where there is no limitation over or reverter mentioned, leaving succession to doubtful claimants, the grant or devise is absolute; and this is especially true where the land is devised to, and held by, lineal descendants, whose right under the will, will be defeated by a contrary construction.

5. The law invokes the aid of laches against an attempted enforcement of forfeiture for condition broken, and permits none but heirs of the donor or original grantor to exercise a right of entry.

6. It is the law of Pennsylvania through the Constitution of the United States and the Bill of Rights, section III of the Constitution of the State, that no human authority can in any case whatever control or interfere with the rights of conscience.

7. A provision in a will devising a life estate in land to testator's son and after his death to his son's children provided they remained faithful to a particular religion, violates the settled policy of the State against restrictions on rights of conscience, and is void.

8. In such case where it appears that testator further directs that if any of the son's children forsook the religion named, the remaining children who remained true to it should take and it appears that all of the children sometime after their father's death, and twenty years after the testator's death abandoned the religion, the devise is not forfeited because (1) the condition, if a condition precedent, was performed; (2) if a condition subsequent, it was invalid to create a forfeiture; (3) laches barred enforcement of forfeiture; and (4) the provision violated the policy of the State.

Argued May 17, 1922.    Appeal, No. 406, Jan. T., 1922, by defendant, from judgment of C. P. York Co., April

T., 1922, No. 64, for plaintiff, in case-stated, in case of Irene Cecelia Drace and Bertha Catharine Mayer v. Nathaniel B. Klinedinst.   Before FRAZER, WALLING, SIMPSON, KEPHART and SCHAFFER, JJ.   Affirmed.

Case-stated to determine marketability of real estate. Before ROSS, J.

The opinion of the Supreme Court states the facts.

Judgment for plaintiff.   Defendant appealed.

*Error assigned* was judgment, quoting record.

*Michael S. Niles,* with him *Charles A. May, Geo. E. Neff* and *Henry C. Niles,* for appellant.—The son John J. did not have the fee vested in him: Elliott v. Diamond Co., 230 Pa. 423; Mickey's App., 46 Pa. 337; Chew's App., 45 Pa. 228; Adams v. Johnson, 227 Pa. 454; Lilley's Est., 272 Pa. 143.

*George Hay Kain* and *Richard E. Cochran,* for appellees, were not heard.

OPINION BY MR. JUSTICE KEPHART, June 24, 1922:

John Mayer, who died in 1892, devised three pieces of land to his son John, for the term of his natural life, and after his death to his children, provided they remained faithful to a particular religion; and, in case any of them forsook this religion, "then and in that case, to the remaining children of my said son who remain true" to this religion.   If the son should die without children, then over to other named relatives.   The children of John "remained faithful" to the religion until some time after the death of their father, then left this church and joined others.   The case now comes to us through an effort to sell some of the real estate; the sale is objected to for the reason the terms of the will created a condition subsequent which, upon the happening of the event on which the condition rested, terminated the estate, causing a forfeiture.

The policy of the law is to keep the alienation of land free from embarrassing impediments, and it endeavors to strip devises and grants of restrictive conditions tending to fetter free disposition; therefore, if the language of the condition is not clear, or is hostile to a state policy in any form, it is not given effect. Moreover, conditions subsequent are always strictly construed when the happening of the event closes an otherwise absolute fee estate; so, where there is no limitation over or reverter mentioned, leaving succession to doubtful claimants, it has been held in different states the grant or devise is absolute. Especially is this true where the land is devised to, and held by, lineal descendants, whose right, under the will, will be defeated by a contrary construction. The law also invokes the aid of laches against the attempted enforcement of forfeiture for condition broken, and permits none but heirs of the donor or original grantor to exercise a right of entry.

The language of this will might imply a condition precedent as well as subsequent, for it reads, to such children "provided they remain faithful" to the designated religion, and, if so, the estate vested in fee, as the condition was complied with. In the only light appellant can claim, it must be regarded as a condition subsequent, in which event it is invalid to create a forfeiture. Conceding the words sufficient to create the condition, there is no penalty mentioned for its violation, as, for instance, that the title should revert to the original devisor, or should go to others named. There is a penalty attached to a violation by part of the children, but none when all depart from this religion, as was done in this case. There is no reverter or limitation over, nor declaration of forfeiture, when the breach occurs. Thus, for instance, it has been held that, where a clause in a deed to a city is conditioned that a lot should be used as a burying ground, and for no other purpose whatsoever, without any record of any intention, either express or implied, that the land should under any circumstances re-

turn to them or their representatives in case it is not so used, a fee is conveyed and cannot be disturbed when there is a use made different from that nominated in the deed: Thornton v. Mayor, etc., of City of Natchez, 129 Fed. 84. So, too, we have held a conveyance to a church corporation of a piece of ground "to have and to hold said lot of ground for mission school purposes," without any provision for reversion or limitation over in case of nonuser, vests in the grantee a good marketable title in fee simple: Rankin Regular Baptist Church v. Edwards, 204 Pa. 216, 217; First Methodist Episcopal Church v. Old Columbia, etc., Co., 103 Pa. 608, 613. Attention may be called to Adams v. First Bap. Church, 148 Mich. 140; Brown v. Caldwell, 23 W. Va. 187, 189, 7 A. L. R. 1429; McKinley v. Martin, 226 Pa. 550, 551; Newell's App., 24 Pa. 199, where this subject is discussed.

But if we are mistaken with respect to the necessary requisites of a good condition subsequent, where the title has vested with no adverse claim though more than twenty years have elapsed, and if we should hold it not necessary to a condition subsequent to expressly provide in a will or deed for forfeiture or right of reëntry or limitation over for condition broken, we still have the condition, depending for its validity upon the constrained worship of God according to the dictates of the testator's conscience.

The right of the citizens of the Commonwealth to worship God in accordance with the dictates of their own conscience is a landmark of the old colony. It was, in fact, one of the chief reasons for its establishment. The charter grant was in the early part of 1682, and, in the same year, the proprietor enacted, with the consent and advice of the deputies, in the first chapter of the laws, "That no person, now, or at any time hereafter, living in this province, who shall confess and acknowledge one Almighty God to be the Creator, Upholder and Ruler of the world,......shall in any case be molested or prejudiced for his, or her conscientious persuasion or practice.

Nor shall he or she at any time be compelled to frequent or Maintain any religious worship, place or Ministry whatever, contrary to his or her mind, but shall freely and fully enjoy his, or her, Christian Liberty in that respect, without any interruption or reflection": Duke of York's Laws, p. 107.

This provision was reënacted later, though it was still later subjected to certain modifications and changes; these were subsequently removed and it is substantially the law of the Commonwealth to-day, through the Constitution of the United States as well as through our own Bill of Rights, section III, of the latter (1 Purd. Dig. 117), declaring that "no human authority can, in any case whatever, control or interfere with the rights of conscience."

Testator's will violated this public policy. He wished to force his lineal descendants to adhere to a certain religious faith, under penalty of the loss of what might be termed their inheritance. Such penalty, of course, was in the nature of a punishment, and, while not as severe, physically, as the stocks, pillory, the whipping post and other forms of physical chastisement, it would have a more lasting effect, and would be likely to produce results. If we were to adopt appellant's view, that such condition should be sustained, we would not only contravene this announced policy, but we would, by that authority, originate the first step to mark the entering wedge whereby, through successive encroachments, the worship of God according to a given religious persuasion could be controlled and compelled indefinitely through the disposition of property at death. It would be a step backward, looking to the days of religious persecution, and it is our duty to stop this effort in its inception.

We therefore hold that the children, regardless of their religious belief, took an absolute fee, and the plaintiffs are entitled to the purchase money agreed to be paid for the property sold.

The decree of the court below is affirmed.