## Jamieson's Estate

*George O. Phillips,* of *McDevitt, Phillips & Watters,* for remainderman and executor of life tenant.

BOLGER, J., April 1, 1946.—This trust arose under the will of decedent, who died on July 13, 1910. Therein she gave her residuary estate in trust, the net income therefrom to be paid to her husband, Thomas Jamieson, for his life, and upon his death the income to be paid to her three daughters, Harriet H. Magowan, Annie S. Hitner and Mary S. Brown, for their lives. It was provided upon the death of any daughter that share of income should be paid to the children of such daughter until the youngest should arrive at the age of 21 years at which time one third of the principal should be paid to such children in equal shares, and if any child of such deceased daughter should be deceased leaving issue then such issue to take the parent's share per stirpes. It was further provided that if any daughter should die without leaving children or issue then that

share of income and principal should become part of the residuary estate and be distributed among the other daughters and their children as provided in the will.

Thomas Jamieson, husband of decedent and first life tenant named, predeceased decedent and his interest never became effective.

The account is filed because Mary S. Brown, one of the daughters and a life tenant as to one third of the trust, died on March 14, 1945. She left to survive her as issue one child, Baldwin S. Brown, who is living and of age. He is executor of the will of his mother, the deceased life tenant, letters testamentary having been granted to him by the Register of Wills of Delaware County, Pennsylvania, on June 15, 1945.

Harriet H. Magowan and Annie S. Hitner, the other daughters named as life tenants, survive and the trust continues as to them. They are the accountants. The present living remaindermen are as set forth in the statement of proposed distribution, all being of age and sui juris and all having received due notice of the audit, except one William J. Hitner, a son of Annie S. Hitner, who has been missing and unheard of since 1937 and whose whereabouts are unknown. Notice of the audit was given him through the United States Veterans' Administration, but it is probable that such notice was never received by him. In any event, it is to be observed that his interest is identical with that of the other remaindermen all of whom did receive actual notice of the audit and of the question involved.

One of the provisions of the will reads as follows:

"It is my will, however, and I hereby direct that if any of my daughters or their issue at the time of my decease be members of the Roman Catholic Church or shall thereafter join the Roman Catholic Church, the legacy or legacies hereby given to such daughter, child or children or issue, so belonging to the Roman Catholic Church, shall lapse and become a part of my residuary estate and be divided among my other daughters and their issue, as hereinabove provided: it being my ex-

press desire that no part of my estate shall go to any person or persons of the Roman Catholic faith."

In their statement of proposed distribution, the accountants state they are advised and believe that Baldwin S. Brown was baptized in the Roman Catholic Church prior to the death of the testatrix and that he was subsequently confirmed in said church and has been educated in Roman Catholic schools. This raises the question of whether Baldwin S. Brown is legally qualified to take under the will in view of the conditions imposed. No party in interest appeared at the audit in active opposition to his right to inherit, but, since the accountants raise the question and they and their issue are the other beneficiaries who stand to benefit in case of lapse, the legal position of Baldwin S. Brown must be tested.

From documentary evidence submitted, it is shown that Baldwin S. Brown was baptized a Roman Catholic on July 25, 1908, at a time when he was not yet five years of age, he having been born December 23, 1903. The testatrix wrote and executed her will on April 29, 1909, and she died on July 13, 1910. According to his own testimony, Baldwin S. Brown was confirmed in and became a member of the Presbyterian Church on March 17, 1918, when he was 14 years of age, and he has been a member of that church since that time down to the present. Upon being questioned as to his religious beliefs as of July 13, 1910, when the decedent died, he answered that he was but six years old at the time and his memory did not reach back that far. There was no evidence produced to show what religious training and education were given to or received by him after his baptism in the Roman Catholic Church on July 25, 1908, although I presume such evidence is available and could have been produced by the parties if they were serious in their opposition. Other than as noted, there is no direct proof that Baldwin S. Brown was a member of the Roman Catholic Church

when his grandmother died in 1910, and perhaps for this reason the question could be dismissed without further comment, but there are other cogent reasons for deciding in his favor and they will be mentioned briefly.

In his brief, counsel argues that the quoted portion of the will is absolutely void under article I, sec. 3, of the Pennsylvania Constitution of 1874, which provides that:

". . . no human authority can, in any case whatever, control or interfere with the rights of conscience and no preference shall ever be given by law to any religious establishments or modes of worship."

An interesting history of this provision in our Bill of Rights is traced by Mr. Justice Kephart in his opinion in Drace v. Klinedinst, 275 Pa. 266, at page 269. It must be conceded, I think, that the conditions imposed by this testatrix are void in that they violate the Constitution and are offensive to our established public policy. However, it does not necessarily follow that, because the conditions are void, they may be brushed aside and ignored as if they had never been written.

Generally, conditions annexed to gifts may be precedent or subsequent. If precedent, the estate does not vest until the condition is fulfilled; if subsequent, it is liable to be divested on the subsequent failure of the condition: Adams v. Johnson, 227 Pa. 454; Gunning's Estate, 234 Pa. 139. Whether a condition shall be construed as precedent or subsequent depends upon the intention of the testator as expressed in the will: McCall v. McCall, 161 Pa. 412; Thompson's Estate, 304 Pa. 349. A condition precedent must be strictly, literally and punctually performed: Adams v. Johnson, supra; and where the condition is precedent the estate never vests even though performance is impossible through no fault of the legatee: Gilliland v. Bredin, 63 Pa. 393; Adams v. Johnson, supra; Gunning's Estate, supra; Thompson's Estate, supra.

The two cases in Pennsylvania which have to do with religious restrictions and which seem to control this situation are Drace v. Klinedinst, 275 Pa. 266 (1922), and Devlin's Trust Estate, 284 Pa. 11 (1925). In the first mentioned case a testator attempted to control or interfere with the rights of conscience of his grandchildren by requiring them to "remain faithful" to his religion. In the latter case the gift was to a grandchild for the "education, maintenance and support of the boy only so long as he was brought up and reared" in a specific religious faith. In both cases the conditions were held to be void as against public policy, and, since they were worded as conditions subsequent, the gifts were not divested upon failure to comply. Apparently the only case which indicates that a void restriction worded as a condition precedent prevents an otherwise valid gift from vesting is Gunning's Estate, 234 Pa. 139 (1912). There, a testatrix gave income to one K. M. "provided he is not living with the woman he married in 1899—one Jane Wilson, should she die or he be divorced from her . . . he is to be given absolutely one half of the principal . . ." Later in the will the testatrix said: "In no case is the present wife of Karl F. Miller to benefit by anything I leave him either in personal or real estate." It was held that the restriction attached to the gift to K. M. was a condition precedent, was not originally either impossible or illegal, and that, since he was living with his wife, J. W., when the testatrix died, the condition was not fulfilled and he was not entitled to take. In that case it will be noticed the dominant purpose of the testatrix was not to induce or procure a separation and divorce between K. M. and his wife, J. W., which would have been illegal and void, but rather her intention was to exclude the wife, J. W., from any participation in her estate either directly or indirectly, a purpose which in itself was perfectly legal and valid. As I read that case, it is not authority for the proposition that a restriction worded as a condition precedent, even

though illegal and void, is effective to prevent vesting of an otherwise valid gift. A careful reading and comparison of the three cases cited convinces me that an illegal condition annexed to a gift is ineffective, regardless of whether the restriction is worded as a condition precedent or as a condition subsequent. In other words, if the illegal condition is precedent, failure to comply does not prevent the otherwise valid estate from vesting; if subsequent, it does not divest the estate already vested.

Even assuming there is some merit to the proposition that an illegal restriction worded as a condition precedent does destroy an otherwise valid gift upon failure of compliance, the provisions of the will presently under consideration must be considered absolutely void as against public policy because they show a dominant purpose to govern and persuade the beneficiaries in the exercise of free religious worship. Not only does the testatrix frame the restriction as a condition precedent by saying that if any of her daughters or their issue shall "at the time of (her) decease" be members of the Roman Catholic Church they shall be disinherited, but she attaches a condition subsequent by saying that if any "shall thereafter join" that church they shall forfeit their inheritances. Later, in the same paragraph and as part of the same sentence, she says it is her "express desire that no part of (her) estate shall go to any person or persons of the Roman Catholic Faith." This language is so broad and sweeping, and so expressive of a general plot to restrict inheritance to a class other than members of the faith mentioned, that it would be fallacious to hold it effective for any purpose whatsover. The whole paragraph must therefore be ignored as if it had never been written.

If it were the law that an illegal condition precedent does prevent an otherwise valid estate from vesting, whereas the same condition worded as a condition sub-

sequent does not divest an estate already vested, and such rule were to be applied in this case, it is interesting to note the anomalous situation which might arise. The present claimant was a Roman Catholic when the decedent died, but later became and now is a Presbyterian. If the illegal condition precedent should be held as a bar to his inheritance, it is obvious that the real intention of the testatrix would be frustrated, for it is clear that she intended only to disinherit those of her grandchildren who were of the Roman Catholic faith, not Protestants. On the other hand, assume for the moment that another grandchild was a Protestant at the time decedent died, but later embraced the Roman Catholic faith and at the time of distribution was a member of that church. The condition upon which that grandchild was to take, being subsequent, would not be effective to divest the interest, and hence we find the Protestant grandchild disinherited while the Roman Catholic grandchild enjoys the testatrix's bounty, a situation entirely converse to that contemplated by her as expressed in the will.

Another equitable consideration which operates in favor of the present claimant is that when his grandmother died he was but five years of age and could not therefore have had any independent religious beliefs of his own choosing. In Devlin's Trust Estate, 284 Pa. 11, the beneficiary was a child of three years at the time of the making of the trust instrument containing the condition, and the court held that it was therefore impossible for him to make intelligent choice of his religious desires. In the present case, as in the one just mentioned, the age of the beneficiary at the time the condition was imposed is a factor to be considered. For reasons stated, and based on the authorities cited, an award will be made hereunder of one third of principal to Baldwin S. Brown in like manner as if no condition had been annexed to the gift to him.

And now, April 1, 1946, the account is confirmed nisi.