## Thompson Estate

*Brooks, Curtze & Silin,* for petitioners.

*William J. Carney, William Washabaugh,* and *Gifford, Graham, Macdonald & Illig,* for respondents.

WAITE, P. J., October 23, 1947.—Millie K. Thompson died May 12, 1947, leaving a last will and testament dated December 17, 1935, together with two codicils dated respectively October 24, 1939, and June 13, 1945. A brother, Charles W. Kohler, referred to in the will, died November 29, 1946, nearly six months before testatrix.

The matter is now before the court on petition for a declaratory judgment, concurred in by the answer of respondent, asking for an interpretation of the will to determine the validity of a legacy to Lois Kohler, widow of the said Charles W. Kohler, contained in the codicil of October 24, 1939, and also what portion, if any, of the inheritance and estate taxes levied upon the said estate should be paid by the legacies embraced in the codicils.

Questions of estate and inheritance taxes may be determined by declaratory judgment as provided in the Uniform Declaratory Judgments Act of June 18, 1923, P. L. 468, as amended by the acts of April 25, 1935, P. L. 72, sec. 1, and May 26, 1943, P. L. 645, sec. 1. Ordinarily the interpretation of wills as to distribution under the Fiduciaries Act of June 6, 1917, P. L. 447, and the Wills Act of June 7, 1917, P. L. 403,

are to be determined at the time of the audit of the fiduciary's account, unless concurred in by all parties in interest and where it also appears that such judgment will, in all probability, put an end to litigation as to the questions involved. The said Declaratory Judgments Act and its amendment gives the court some discretion in hearing and determining said questions. In view of the concurrence of all interested parties in this proceeding and the probability that a judgment entered thereon would put an end to litigation as to the question involved, the court, in our opinion, has authority to enter a declaratory judgment decree.

The portions of the will and the codicils requiring interpretation are as follows:

Item 1 of the will provides as follows:

"I direct my executors to pay all my just debts and funeral expenses out of my estate and also any and all inheritance taxes or estate taxes that may be assessed against any bequest made hereunder or against beneficiaries by virtue of such bequests."

The first codicil of the will, dated October 24, 1939, provides in part as follows:

"Except as herein modified, I hereby confirm in all respects my said last will and testament, dated December 17, 1935."

The second codicil of the will, dated June 13, 1945, provides in part as follows:

"Except as to the changes herein, I hereby confirm in all respects my said last will and testament dated December 17, 1935 and the first codicil dated October 24, 1939."

The first codicil, dated October 24, 1939, also contains the following bequest:

"To my sister-in-law, Lois Kohler, wife of my brother, Charles W. Kohler, of Cambridge Springs, Pennsylvania, provided she and my brother shall be living together at the time of my decease, the sum of five thousand dollars ($5,000.00)."

Testatrix's brother, Charles W. Kohler, died on November 29, 1946, and thus, by an act of God, made it impossible for Lois Kohler to be living with him on May 12, 1947, the date of Millie K. Thompson's death.

Mrs. Lois Kohler testified to her intimate acquaintance with her sister-in-law, Millie Thompson, testatrix. She said that Mrs. Thompson was most kind and generous to her; that Charles W. Kohler, her husband, was very exacting and difficult to get along with and that in 1939, prior to making this codicil, she discussed these matters with Mrs. Thompson and thereupon Mrs. Thompson urged her not to leave her husband and told her that it would be worth her while to continue to live with her husband until his death. Testatrix seemed to have felt that this was necessary for her brother's welfare. Mrs. Kohler was living with her husband, Charles W. Kohler, at the time of his death on November 29, 1946, and had never at any time separated from him. She said that she saw her sister-in-law, Millie Thompson, frequently; that Mrs. Thompson's condition of health, both physical and mental, for sometime before her death was not good; that Mrs. Thompson realized only occasionally during the last months of her life that her brother, Charles W. Kohler, was dead; that after his death Mrs. Thompson frequently inquired about him, asking where he was. Mrs. Kohler's testimony was corroborated by Mrs. Edna Engstrom, who for several years had lived across the street from the Kohlers in Cambridge Springs and had known them intimately for a long time. She said that she was in their house frequently, almost daily; that Mrs. Kohler was very exacting and difficult to get along with and that Mr. and Mrs. Kohler were living together at the time of his death. James Doran, testatrix's chauffeur, was also called as a witness. He had worked in the family for many years, also serving Mr. Thompson during his lifetime. He saw Mrs. Thompson daily and saw her at the hospital in her last illness. He

testified that she was in poor condition, both physically and mentally, for several years prior to her death and did not realize that her brother, Charles W. Kohler, was dead; that during the last two or three weeks of her life she asked where her brother was and if the witness had seen him.

From all of this testimony it is clear, from the relations between Millie K. Thompson and her sister-in-law, Lois Kohler, and the conversation with her shortly before the making of the codicil, that Millie K. Thompson was earnestly desirous that her sister should continue to live with her brother, Charles W. Kohler, as long as he lived and intended to reward her for so doing and that it was testatrix's intention that if Lois Kohler continued to live with her husband as long as he lived she should have the said bequest of $5,000. That is the natural and reasonable interpretation of the will in the light of this testimony. To say that testatrix intended that her sister-in-law should continue to live with her husband after he was dead would be absurd and impute an irrational intent to testatrix which cannot be presumed.

Lois Kohler was a competent witness. She is not claiming against the estate but under the will. In Henry's Pennsylvania Trial Evidence, 3rd ed., p. 687, §441, it is said:

"In an issue devisavit vel non or any other issue or inquiry respecting the property of a deceased person where the controversy is between persons claiming by devolution from such deceased owner, their interests are not adverse to the deceased but only the adverse to each other, and all persons are competent to testify."

In Dalbey's Estate, 326 Pa. 285, at page 286, it is said:

". . . Under the common law rule formerly in force in this state a devisee or legatee of a will was totally incompetent to testify. In Harding v. Harding, 18 Pa. 340, this court held that the signature of a subscribing

witness, who was a devisee, could not be proved in support of execution, since the devisee would himself have been incompetent. This rule was abrogated by the Act of May 23, 1887, P. L. 158, Sec. 4, in accord with the more modern viewpoint, which recognizes the probative value of such testimony as outweighing the danger of perjury, and limits the effect of the witness' interest to the question of credibility. While Section 5(e) excludes the testimony of a witness whose interest is adverse to the interest of a decedent in an action concerning it, there is the following exception, among others: '. . . unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy be between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses.' This enactment renders competent all witnesses in disputes involving the testamentary disposition of property regardless of any interest possessed by them in the particular decedent's property. In Frew v. Clarke, 80 Pa. 170, this court held that a legatee was competent to prove execution of the will under which he was to take, stating at page 179: 'To deny this is to disregard the specific terms of the act, and to refuse to give effect to the language cited.' "

In interpreting a will the court should view it from its four corners and so far as possible put itself in the position of testator and all of the surrounding circumstances.

In McGlathery's Estate, 311 Pa. 351 at page 354, it is said:

". . . But it may be argued that to assist in the construction of the will the court should take into consideration the amount and character of the property of the testatrix when she made her will: Postelthwaite's App., 68 Pa. 477, or, to quote the familiar language of James, L. J., in Boyes v. Cook, 14 Ch. Div. 56, you

may place yourself, so to speak, in the testator's arm chair and consider the circumstances by which he was surrounded when he made his will, to assist you in arriving at his intention. Jarman on Wills, 7th ed., 749, discusses the subject."

See also Lerch's Estate, 309 Pa. 23, and Wanamaker's Estate, 312 Pa. 362.

An excellent statement of the law on questions of conditions and restrictions in wills, excuses for nonperformance and discharge of conditions by impossibility of performance, is given in 69 C. J., 681, §1798, as follows:

"Performance of a condition may be excused by a change in circumstances from what was contemplated, as well as by inevitable accident, the death of a person whose existence is necessary for performance, or the refusal of interested persons to accept the performance offered. This is true at least of a condition subsequent. Where, without the fault of the devisee or legatee, a condition subsequent is impossible of performance at the time of its creation or afterwards becomes so by an act of God, of the law, of the testator, or of a third person, it is discharged, performance thereof is excused, and the estate or interest becomes absolute and free of the condition. Indeed, in some cases the courts deem it unimportant whether the condition is precedent or subsequent where nonperformance is not the fault of the devisee but results from matters beyond his control. . . ."

In Canfield's Estate, 109 Pa. Superior Ct. 329, at page 332, the court said:

". . . In the construction of wills each individual case must stand on its own bottom and must be governed by the facts surrounding it and by the intention of the testator is drawn from the four corners of the will itself. 'Precedents are of little value in the construction of wills, because when used under different circumstances with different context, the same words

may express different intentions': Fidelity Trust Co. v. Bobloski, 228 Pa. 52, 57."

In 2 Page on Wills, pp. 815, 816, §920, it is said:

"While the intention of the testator is to be ascertained, in the first instance, from the language which is used in the will, his intention cannot be ascertained from such language alone. The testator used this language in view of the surrounding circumstances, as known to him, and with reference thereto. If the Court refuses to consider the surrounding circumstances, the court declines to place itself in the position in which testator was, when he used the language which the court is trying to construe; and the meaning which is thus ascertained is very likely to be different from the meaning which the testator in question had; as well as different from the meaning which the average testator would have had under like circumstances. For these reasons the court places itself in the position in which testator was when he made the will, and the will is construed in the light of the surrounding facts and circumstances. The facts and circumstances which are to be considered are those which existed when the will was made."

In McCall et al. v. McCall et al., 161 Pa. 412 (1894), testator devised his real estate to his wife during widowhood with the remainder to his son, "providing he shall remain with my wife and myself until our decease". The son predeceased the mother and it was held that the real estate vested in the heirs of the son, the condition having become impossible of performance by reason of an act of God, the condition was defeated.

As to the application of item 1 of the original will, providing for the payment of the State inheritance taxes out of the residuary estate to the bequests in the codicils in each of which there is a specific provision republishing the will, except as it is modified in the codicils, we are clearly of opinion that the provision of the original will for the payment of said taxes is

equally applicable to the payment of the estate and inheritance taxes upon the legacies embraced in the codicils, probated and made a part of the will.

In Croxton's Estate, 289 Pa. 433, 435, the court said:

" 'It is well settled that additional legacies are prima facie subject to the same incidents and conditions as the original legacy. In Theobald on Wills (6th ed.), chapter 20, V. page 160, it is said: 'As a rule substituted or additional legacies are subject to the same conditions as the original legacies, for instance, as regards freedom from legacy duty', citing in support thereof Earl of Shaftesbury v. Duke of Marlborough, 7 Sim. 237, which was a case of an augmented legacy; Cooper v. Day, 3 Mer. 154; and Fisher v. Brierley, 30 B. 267, which was a case of a substituted legacy. And to the same effect see Hawkins on Wills (Am. ed.) 306, wherein it is said: 'An added or substituted legacy is prima facie payable out of the same funds and subject to the same incidents and conditions as the original legacy.' See also Phillips' Est., 1 D. R. 311; Williams on Executors, 1040; Page on Wills, par. 800; and Werner on Wills, page 1522. . . .' "

In Cumming's Estate, 12 Pa. C. C. 45, at page 54, the court said:

"We think, however, that the provisions of the will as to collateral inheritance tax is to be understood not as restricted to the legacies then given, but as showing the intention of the testator to impose the burden upon his residuary estate in relief of all legacies, whether given by the original will or codicil. It is true he says, 'All the legacies given in this my will' (the codicil not then having been written) 'shall be free from collateral inheritance tax'; but a codicil becomes part of the will, and legacies given by it are so far given by the will that a testator, after such a provision in the will proper would not be apt to think its repetition necessary in the codicil. The further direction that the executors

shall pay the tax upon 'all the said legacies out of the residue of my estate', does not imply exclusion."

In view of the testimony offered and received without objection, the reasons herein set forth and authorities quoted and cited, we are clearly of opinion that Lois Kohler is entitled to the legacy of $5,000, as provided in the codicil of October 24, 1939, and that the estate and inheritance taxes upon this and all other legacies, both in the original will and in the codicils, are to be out of decedent's residuary estate as provided in item 1 of the original will.

A declaratory judgment is directed to be made in accordance herewith.