## Keffalas Estate.

Argued March 15, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Gilbert J. Helwig*, with him *Jonathan L. Alder, John L. Wilson,* and *Reed, Smith, Shaw & McClay,* for appellants.

*Lee C. McCandless,* with him *McCandless & Mc-Candless,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, September 26, 1967:

The instant appeal is from the final decree of the Orphans' Court of Butler County. The portions of the

decree appealed from are those which: (1) Invalidate as against public policy conditions on gifts to the testator's children contingent on their marrying spouses of "true Greek blood and descent and of Orthodox religion". (2) Deny a $12,500 credit taken by the executors for bonuses they were allegedly entitled to as employees of the testator's businesses in 1955. (3) Refuse to find created a special power of appointment in the executors by the provision that any property coming "under the jurisdiction" of the executors should be divided among the children, with preference to sons who marry Greek girls. We affirm in part and reverse in part as to Part I (the invalidation as against public policy). We affirm as to Part II (the bonuses), and we reverse as to Part III (the power of appointment).

## I

Testator, in Paragraphs Fifth through Eleventh of his Will, gave to each of his children but Dorothy, $2,000 on condition that such child marry one of "true Greek blood and descent and of Orthodox religion". Paragraphs Twelfth and Thirteenth disposed of testator's business establishments to his three oldest sons, on the same condition. Paragraph Fourth made a conditional bequest of $2,000 to daughter, Dorothy, who had married prior to the execution of the will. That bequest was conditioned on her remarrying a man of true Greek blood and descent and of Orthodox religion, after her first marriage was terminated by death or divorce. Similarly, Paragraph Fourteenth provided a bequest of $2,000 to any child who originally married a non-Greek but later, as a result of death or divorce, remarried a Greek.

The court below invalidated all of these conditions as being violative of public policy because conducive to divorce.

It should be noted that the court below did *not* hold the conditions invalid as constituting an infringement on freedom of religion. We agree with the appellants that such a ruling is the only one consistent with *Clayton's Estate,* 13 Pa. D. & C. 413 (1929) affirmed 302 Pa. 468, 153 A. 742 (1931). There, the lower court stated that ". . . this influence, operating only on the choice of a wife, is too remote to be regarded as coercive of religious faith." Thus, a restriction on the religion of a potential *spouse* does not fall within the proscription of *Drace v. Klinedinst,* 275 Pa. 266, 118 A. 907 (1922), in which the gift is contingent upon the retention of a certain faith by the *beneficiary.* See also Restatement, Property, §425, comment c.

However, the court below held, and we agree, that the condition in Paragraphs Fourth and Fourteenth, although not violative of freedom of religion, was conducive to divorce and thus violative of public policy. We cannot accept the contentions of appellants that evidence of an actual subjective intent to cause divorce is a prerequisite to striking down a condition based on divorce. On the contrary, the distinguishing factor seems to be whether the disposition is reasonably related to the contingency of divorce. For instance, in *Rininger's Estate,* 305 Pa. 203, 157 A. 488 (1931), a gift to the testator's son was in trust, but was to become outright in the event of a divorce. There, this Court stated that the condition was valid, since an assured income was no longer so important after a divorce. In the instant case, an additional gift is conditioned on divorce (or death) and remarriage to a Greek. The disposition is not logically related to the changed circumstances of the child, but is rather a channel for the testator's ethnocentricity and an encouragement to divorce.

It is true that a disposition virtually indistinguishable from the instant one was upheld in *King's Estate,*

58 P.L.J. 377 (Alleg. 1910). However, we believe that that case is out of the mainstream of judicial thought as it has evolved to this time. Restatement, Property, §427. There is no doubt that "a man's prejudices are part of his liberty", *King's Estate,* supra, and we have so held in not striking down the marriage conditions as violative of freedom of religion. Yet the liberty of prejudice cannot transgress the interests of the Commonwealth. When a disposition tends to lead to divorce, as this one does, despite the relatively small amounts involved, then it is void.

We would so hold, even without the clause in the will permitting the executors to waive the time limit set by the will, with regard to gifts to children. That clause merely reinforces our view. Although it might well have been inserted for purposes other than to give a beneficiary time to divorce and remarry in order to qualify for a particular gift, the fact remains that it does provide a ready medium for the accomplishment of what Paragraphs Fourth and Fourteenth induce.

We therefore affirm that part of the adjudication below invalidating the remarriage condition, and enlarging each child's interest to a fee. See Restatement, Property, §427, comment c and Illustration 1.

However, we do not agree with the learned court below that the invalidity of the first clause of Paragraph Fourteenth taints all other provisions of the will subject to a marriage condition. True, the remarriage clause of Paragraph Fourteenth must be read *in pari materia* with the bequests of Paragraphs Fourth through Eleventh. Testator intended one potential gift of $2,000 to each child on condition of either marriage or remarriage to a Greek. The conditions on those $2,000 bequests are, indeed, tainted, and fall as conducive to divorce. However, the remarriage conditions, the fly in the ointment, do not attach to the gifts of the businesses in Paragraphs Twelfth and Thir-

teenth.  As we have seen, the marriage conditions of themselves are valid.  Thus, we reverse the invalidation of the conditions in Paragraphs Twelfth and Thirteenth.  Those paragraphs stand as written by the testator.

## II

The denial of credit to the executors for the $12,500 paid to themselves as employee bonuses for 1955 is hereby affirmed.  There is evidence from which the auditing judge could have found payment in 1955.  Credibility of appellants' witnesses was a matter for the auditing judge, and we are loathe to disturb his findings on such questions of fact.

## III

Finally, we do not agree with the auditing judge that no special power of appointment is created by the language of the second clause of Paragraph Fourteenth.  That clause provides that any property that "becomes under the jurisdiction of my executors at any time must be divided among my children with preference given to my sons who marry girls of true Greek blood and descent and Orthodox religion".  The auditing judge felt that this did not create a valid power of appointment because it failed sufficiently to designate the donee of the power.  Even unaided by the benefit of any presumptions, we feel certain that the executors are the intended donees of the power.  No specific technical form of words is necessary to create a power of appointment.  *McKallip's Estate,* 324 Pa. 438, 188 A. 343 (1936).  Particularly is this so when the instrument being construed is lay-drawn.

Moreover, certain rules of construction move us to hold that a valid power is created.  Since no other

residue was created, any lapse or failure to dispose of any property would result in a partial intestacy if the above clause were not held to create a valid power. It is a well-known rule of construction that a will should be construed, if possible, so that no intestacy will occur. *Rouse Estate,* 369 Pa. 568, 87 A. 2d 281 (1952); *Carmany Estate,* 357 Pa. 296, 53 A. 2d 731 (1947).

Moreover, wills should be construed so as to give effect to every word employed by the testator. *Vandergrift Estate,* 406 Pa. 14, 177 A. 2d 432 (1962). The construction of the lower court renders the clause at issue nugatory. Construing the clause as a power of appointment thus accords with valued rules of construction, and helps to assure that the testamentary intent will be followed as closely as the law allows.

Also involved in this appeal is a motion to quash, which we have denied. The main thrust of appellees' argument is that the appeal should be quashed because of appellants' failure to comply with Rules 52 and 64 of this court. Inasmuch as the deviations from the rules were minor and apparently unintentional and since no prejudice was caused thereby to appellees, we believe that a decision on the merits is proper.

Appellees also contend that appellants lack standing, since the personal representatives are not parties in interest. The surcharge upon the executors gives standing, as does the status of each appellant as a legatee and devisee as well as executor. *Stachnick Estate,* 376 Pa. 592, 103 A. 2d 765 (1954).

The decree of the court below is vacated and the case remanded to that court for the entry of a decree consistent herewith. Costs to be borne by the estate.