## Rader Estate

*Wallace C. Worth, Jr., Thomas E. Butterfield, Jr.,* and *Elmer D. Christine*, for accountants.

*Walter Olenick*, guardian ad litem, p.p.

WILLIAMS, P. J., November 14, 1974.—Harold C. Rader died testate July 24, 1970.

Articles fifth, sixth and twelfth of decedent's will provide as follows:

"Article Fifth: Devise of Remainder of Reeder's Property and other Real Estate

"A. I give and devise to my Trustees hereunder cabins 1, 2, 3, 4, 5, 6 and related buildings, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 24, 25, 28, 29, and 33 (excluding the cabin selected by Anna Rader under item FOURTH of this my Will), being part of the real estate, with the improvements thereon erected, known as Reeder's in Jackson Township, Monroe County, Pennsylvania, operated as a resort, and also premises 612 Fourth Avenue and premises 428 West Broad Street, Bethlehem, Lehigh County, Pennsylvania. I direct that my Trustees shall engage my son, Jack B. Rader, as operator of these properties to manage the same, maintain them in good repair, collect the rents, pay therefrom all expenses including repairs, labor and materials, fire insurance, taxes, assessments and necessary replacements of any portion thereof. The gross income attributable to the operation of cabins No. 1 (which had been my home), 28, 29, and 33, and 612 Fourth Avenue and 428 West Broad Street, shall be paid by my son to my Trustees. My son, Jack B. Rader, shall pay to my Trustees each year from the proceeds of his operation of said property the sum of Nine Thousand ($9,000.00) Dollars. The balance of income after the payment of Nine Thousand ($9,000.00) Dollars to my Trustees and the payment of expenses attributable to said property shall be retained by my son, Jack.

"It is my wish that my son continue the operation of this resort and the other properties as he has carried it on during my lifetime, subject to the exceptions noted herein.

"B. If my son, Jack, wishes any said properties sold and so directs my Executors and Trustees in

writing, then I direct my Executors and Trustees to sell the same, execute Deed or Deeds in fee simple thereof, and hold the proceeds IN TRUST as a part of the Trust of my residuary estate, subject to all of the provisions of paragraph SIXTH of this will.

"C. If my son, Jack, is for any reason unable to manage said properties my Trustees may either retain the Reeder's property, employ another to manage it and pay the net income as provided in paragraph SIXTH of this my Will, or they may sell said property and add the proceeds to the assets held by them under the terms of paragraph SIXTH of this will.

"Article Sixth: Trust of Residuary Estate

"I give and devise the residue of my estate, real and personal, to my Trustees hereunder, IN TRUST, to invest and reinvest the same and to distribute the income therefrom and the principal thereof as follows:

"A. During the lifetime of my son, Jack B. Rader, to accumulate the income.

"B. If under the provisions of paragraph FIFTH of this my will my Executors have sold any portion of said properties, or at my son's request have employed another manager, then the income from investment of the proceeds or from the operation of the properties shall be paid to my son, Jack, at least quarter-annually.

"C. On the death of my son, Jack B. Rader, to divide the principal into as many equal shares as there are grandchildren of mine living at the time of my death, and as to the share of each grandchild:

"1. To accumulate the income therefrom until the beneficiary attains the age of twenty-one; thereafter to pay the beneficiary the net income therefrom at least quarter-annually.

2. To pay at any time from income or principal whatever amounts my Trustees, in their sole descretion, deem necessary for the comfortable main-

tenance and support of the beneficiary, including under-graduate and graduate college education.

"3. Each grandchild on attaining the age of thirty-five shall receive one-third of his share based on an appraisal thereof immediately prior to the time of distribution.

"4. Each grandchild on attaining the age of forty shall receive one-half of his share based on an appraisal thereof immediately prior to the time of distribution.

"5. Each grandchild on attaining the age of forty-five shall receive the balance of his share. . . .

"Article Twelfth: Acceleration Provision

"A. If at any time my son, Jack B. Rader, becomes unmarried, either through the death of his wife or by process of law, I direct that he shall thereupon receive full distribution of the principal of that portion of my estate disposed of in paragraph FIFTH of this my Will (Subject, however, to the gift to my wife as provided in paragraph FOURTH A), free and clear of all limitations and trusts set forth in said paragraph FIFTH.

"B. If Marjorie A. Rader, now the wife of my son, Jack B. Rader, ever enters upon my property known as Reeder's, during the lifetime of my son, Jack, in that event all provisions in this will for the benefit of my son, Jack, shall thereupon terminate and the gifts to my grandchildren under item SIXTH of this my Will shall be accelerated just as though my son, Jack B. Rader, had died."

At the audit of the executor's account, Jack B. Rader requested that the Court award him the property disposed of by Article Fifth of the will, free of all conditions. He contends that the testator's purpose in imposing the conditions set forth in Article Twelfth of the will, was to induce him to divorce

his wife and that the conditions are void as against public policy.

In Coleman Estate, 456 Pa. 163, 169 (1974), the court stated:

"This Court has not infrequently stated that a settlor may 'condition his bounty as suits himself, so long as he violates no law in so doing.' [Citing cases] We have also consistently adhered to the principle that a person's prejudices are part of his liberty, and that these prejudices, *if their enforcement does not offend the Constitution or public policy,* can be made part of a settler's scheme of distribution [citing cases]." (Emphasis supplied)

What we must here decide is whether testator's will merely provides for the contingency of a divorce or whether it is calculated to encourage Jack B. Rader to divorce or separate from his wife.

In Rininger's Estate 305 Pa. 203 (1931), the will provided: "In the event that my said son, Joseph E. Rininger, shall become unmarried, either through the death of his wife, Ada Rininger, or by process of law, I direct that my executors pay to him, absolutely and unconditionally, the entire funds held by them in trust." The Supreme Court said, page 205: "But in the will before us the outright gift is not upon condition that the son shall be divorced, but in the event that he shall become unmarried either through the death of his wife or by process of law."

The language of Article Twelfth A is practically identical with the language employed by the testator in Rininger's Estate, supra, and under that decision such a condition does not violate public policy. The holding in Rininger's Estate appears to have been approved in Keffalas Estate, 426 Pa. 432, 435 (1967), where the Supreme Court stated: "We cannot accept the contentions of appellants that evidence of an

actual subjective intent to cause a divorce is a pre-requisite to striking down a condition based on divorce. On the contrary, the distinguishing factor seems to be whether the disposition is reasonably related to the contingency of divorce. For instance, in Rininger's Estate, 305 Pa. 203, 157 A. 488 (1931), a gift to the testator's son was in trust, but was to become outright in the event of a divorce. There, this Court stated that the condition was valid, since an assured income was no longer so important after a divorce. In the instant case, an additional gift is conditioned on divorce (or death) and remarriage to a Greek. The disposition is not logically related to the changed circumstances of the child, but is rather a channel for the testator's ethnocentricity and an encouragement to divorce."

Standing alone, Article Twelfth A under both Rininger's Estate, supra, and Keffalas' Estate, supra, would not violate public policy. However, we must consider the will in its entirety and Article Twelfth A when read in connection with Article Twelfth B exposes the intent of testator in an entirely different light.

Article Twelfth B provides that if his son's wife enters on testator's property known as Reeder's, during the lifetime of his son, all provisions in his will for the benefit of his son shall terminate. This harsh condition is not logically related to any contingency of changed circumstances of his son and encourages his son to divorce or separate from his wife. See Keffalas' Estate, supra, page 435; Fisher Estate, 29 D. & C. 2d 526 (1962); Morton Estate 13 D. & C. 2d 148 (1957). This condition is totally incompatible with the continuance of the marriage relationship. It practically requires a separation of the son and his wife to comply with its terms.

In effect, testator is giving to his son a choice between a normal marriage relationship and the inheritance of his property known as Reeder's. The son cannot live on the premises unless he separates from his wife. If the son or one of the children should meet with an accident or illness which confined them to the property, the wife and mother could not visit or attend to the needs of her husband or child. We find this condition in the will transgresses public policy and, for that reason, is void. In light of Article Twelfth B, it is unrealistic to conclude that Article Twelfth A was not intended to encourage divorce or separation, but was merely providing for the contingency of changed circumstances if the son's marriage perchance was terminated. When we consider the fact that the will provides in Article Fifth that the son be engaged to manage the properties; that the trustees are to sell the properties only if the son so directs and when we further consider that Article Sixth B provides that if any of the properties are sold or at the son's request the trustees employ another manaager, then the income from the investments of the proceeds or from the operation of the properties shall be paid to the son at least quarterly; it is clear that testator's son was the principal object of his bounty.

These provisions of the will, along with the provision for acceleration stated in Article Twelfth, demonstrate that testator wanted his son to have unconditional ownership of his property. The conditions on which the acceleration provision of Article Twelfth would become operative are in no way related to testator's scheme of distribution of his estate. The conditions were in no way related to the contingency of changed circumstances in the life of his son. The conditions were placed in the will to make it possible for

testator to gratify his desire to give an unconditional estate to his son and at the same time to vent his hatred for his daughter-in-law by encouraging his son to acquire such unconditional ownership by divorcing his wife. This conclusion is fully justified in light of testator's direction that if his daughter-in-law ever entered the premises in the lifetime of his son, "all provisions in this will for the benefit of my son, Jack, shall thereupon terminate and the gifts to my grandchildren under item SIXTH of this my will shall be accelerated just as though my son, Jack B. Rader, had died."

## CONCLUSION OF LAW

1. The conditions set forth in paragraphs A and B of Article Twelfth of decedent's will violate public policy and are void.

2. The benefits provided for Jack B. Rader by Article Sixth of testator's will are accelerated by the provisions of Article Twelfth A of testator's will and Jack B. Rader is entitled to distribution of the properties described in Article Fifth of testator's will, free from all conditions subject, however, to the rights of testator's widow.

## ORDER

*And now,* November 14, 1974, the conditions attached to Article Twelfth of testator's will are stricken down as against public policy. Counsel for the accountants shall present to the court a decree of distribution consistent with this opinion.